UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

STATE OF FLORIDA,

*Plaintiff*,

v.  Case No. 3:23-cv-9962

ALEJANDRO MAYORKAS, Secretary of the United States Department of Homeland Security, in his official capacity; RAUL ORTIZ, Chief of Border Patrol, in his official capacity; the UNITED STATES OF AMERICA,

*Defendants*.
_____/

**COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, AND DECLARATORY RELIEF**

**INTRODUCTION**

1. Much ink has been spilled regarding Florida's dispute with the Biden Administration over the mass release of aliens at the Southwest Border.

2. On March 8, 2023, after a year and a half of litigation, this Court vacated one of the Biden Administration's unlawful release policies under the Administrative Procedure Act (APA) and entered final judgment. *See* Op. & Order,

Doc. 157, *Florida v. United States*, No. 3:21-cv-1066-TKW-ZCB (N.D. Fla. Mar. 8, 2023) (Wetherell, J.).[1]

3. The vacated policy was known as the Parole Plus Alternatives to Detention Policy (Parole + ATD).

4. Rather than seek an emergency stay, the Department of Homeland Security (DHS) sat on its hands for 58 days before even filing a notice of appeal.

5. Now, with the Title 42 order set to expire on May 11, DHS apparently regrets that decision. The agency, entirely unprepared for the surge of migrants that will come to the Southwest Border when Title 42 ends, did not plan for this plainly foreseeable result.

6. Today is May 10, the day before the Title 42 order expires, and the media reports that DHS plans to immediately restart the *en masse* parole of aliens at the Southwest Border.[2]

7. That plan may violate the Court's vacatur. *See* Op. & Order at 108.[3] But it is unquestionably cynical, in bad faith, and contrary to both the Immigration and Nationality Act (INA) and the APA. It is also, unfortunately, consistent with the

---

[1] All further citations to "Op. & Order" refer to Judge Wetherell's March 8 Opinion and Order unless otherwise noted.

[2] https://www.nbcnews.com/politics/biden-admin-plans-order-release-migrants-us-no-way-track-rcna83704.

[3] To ensure consistency between any motion to enforce the existing judgment and the relief sought in this case, Florida plans to move to transfer this case to Judge Wetherell.

game of whack-a-mole DHS has been playing with Florida and this Court for almost two years.

8. Florida seeks a temporary restraining order, a preliminary injunction, an order postponing the effective date, and ultimately vacatur of the new policy.

## PARTIES

9. Plaintiff State of Florida is a sovereign State and has the authority and responsibility to protect its public fisc and the health, safety, and welfare of its citizens.

10. Florida sues Defendant the United States of America under 5 U.S.C. §§ 702–03 and 28 U.S.C. § 1346.

11. Defendant Alejandro Mayorkas is the Secretary of DHS. DHS is the federal agency principally responsible for immigration enforcement. As most relevant here, DHS oversees U.S. Citizenship and Immigration Services (USCIS), U.S. Customs and Border Protection (CBP), and Immigration and Customs Enforcement (ICE). Florida sues Secretary Mayorkas in his official capacity.

12. Defendant Raul Ortiz is the Chief of Border Patrol, which is a component of CBP. Florida sues him in his official capacity.

## JURISDICTION AND VENUE

13. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1346, and 1361, and 5 U.S.C. §§ 702–03.

14. The Court is authorized to award the requested declaratory and injunctive relief under 5 U.S.C. §§ 705–06, 28 U.S.C. §§ 1361 and 2201–02, the Constitution, and the Court's equitable powers.

15. Venue lies in this district pursuant to 28 U.S.C. § 1391(e)(1) because the State of Florida is a resident of every judicial district in its sovereign territory, including this judicial district (and division). *Florida v. United States*, No. 3:21-cv-1066, 2022 WL 2431443, at *2 (N.D. Fla. Jan. 18, 2022). Further, because this lawsuit principally concerns conduct related to Florida's previous challenge, which was litigated in this division, a substantial part of the events or omissions giving rise to Florida's claims occurred here.

## FACTUAL BACKGROUND

16. On September 28, 2021, Florida filed its Complaint in *Florida v. United States*. Doc. 1, No. 3:21-cv-1066-TKW-ZCB (N.D. Fla.).

17. Florida initially challenged DHS's "prosecutorial discretion" policy, which involved the mass release of aliens at the Southwest Border without any processing or accountability. Shortly after Florida sued, DHS replaced that policy with the first Parole + ATD Policy (the November Parole + ATD Policy). Doc. 6-2, No. 3:21-cv-1066-TKW-ZCB (N.D. Fla. Dec. 3, 2021).

3

18. Eight months later, DHS rescinded the November Parole + ATD Policy and replaced it with the July Parole + ATD Policy. *See* Doc. 70, No. 3:21-cv-1066-TKW-ZCB (N.D. Fla. July 20, 2021).

19. It is plain from the record that DHS's practice of constantly changing its policies was based on DHS's conclusion that its policies were indefensible.

20. As Judge Wetherell remarked during closing arguments, "it seemed to me that the real reason" for the policy change was that "doing prosecutorial discretion releases . . . was more challenging to defend than something based on a specific parole statute."

21. Similarly, Judge Wetherell remarked at the pretrial conference that he "would hope it would be fairly obvious to everyone" that the prosecutorial discretion practice was "invalid."

22. Judge Wetherell made similar comments with respect to the first iteration of Parole + ATD. Specifically, he said that he was "pretty clear" as the case progressed that if DHS "had not come up with a new memo and a new administrative record . . . it was dead on arrival." He further stated that it was "pretty obvious . . . that [DHS] created this new July memo to backfill the problem they had with a policy that was completely indefensible."

23. On March 8, 2023, the Court vacated the July Parole + ATD Policy and remanded to DHS for further proceedings. Op. & Order at 108. The Court did not

4

vacate the prosecutorial discretion policy or the November Parole + ATD Policy because DHS insisted that it had abandoned those policies and any such challenges were therefore moot.

24. DHS did not seek an emergency stay of the Court's order. Instead, DHS waited until the second to last business day before the deadline to file its notice of appeal. Doc. 159, No. 3:21-cv-1066-TKW-ZCB (N.D. Fla. May 5, 2023).

25. Based on DHS's repeated representations to Florida and to the Court, both by its attorneys and by its employees and agents under oath, the Court's vacatur left DHS with Order of Recognizance releases under 8 U.S.C. § 1226(a) as the only available processing mechanism for Border Patrol to release aliens *en masse* at the Southwest Border. Notably, releases under § 1226(a) require DHS to first initiate removal proceedings against the alien as a precondition for release.

26. On May 9, 2023—approximately two months after the Court vacated the July Parole + ATD Policy—the media began reporting that Border Patrol planned to restart the mass release of migrants at the Southwest Border upon the expiration of the Title 42 order on May 11, 2023.

27. On May 10, a DHS spokesperson told the media that DHS plans to employ the "targeted use of parole [to] allow Border Patrol to focus its resources

most effectively [on] quickly process[ing] and remov[ing] individuals who do not have a legal basis to remain in the country."⁴

28.  In short, rather than seek a stay of the Court's judgment in good faith, the Biden Administration plans to continue its game of whack-a-mole with Florida and with this Court by promulgating yet another unlawful policy. And DHS apparently hopes that with final judgment entered in *Florida v. United States* and an appeal pending, Florida will have to start from scratch.

29.  As the Court already recognized, Florida is injured by DHS's mass release of aliens at the Southwest Border, including by paying education expenses, unemployment benefits, the costs of incarceration, emergency Medicaid, and other similar benefits. Op. & Order at 44, 53–58. And those injuries are irreparable because DHS has sovereign immunity.

30.  Florida therefore seeks the following relief.

## CLAIMS

### COUNT 1

**Agency action that is not in accordance with law
and is in excess of authority in violation of the APA**

31.  Florida repeats and incorporates by reference ¶¶ 1–30.

---

⁴ https://www.nbcnews.com/politics/biden-admin-plans-order-release-migrants-us-no-way-track-rcna83704.

32. Under the APA, a court must "hold unlawful and set aside agency action" that is "not in accordance with law" or "in excess of statutory . . . authority, or limitations, or short of statutory right." *See* 5 U.S.C. § 706(2)(A), (C).

33. DHS's new policy violates 8 U.S.C. §§ 1225(b), 1226(a), and 1182(d)(5).

## COUNT 2

### Arbitrary and capricious agency action in violation of the APA

34. Florida repeats and incorporates by reference ¶¶ 1–30.

35. Under the APA, a court must "hold unlawful and set aside agency action" that is "arbitrary [or] capricious." 5 U.S.C. § 706(2)(A).

36. While DHS has not yet provided a copy of the new policy to Florida, it is impossible to imagine that DHS has engaged in reasoned decisionmaking. DHS should have sought an emergency stay of the Court's vacatur if it disagreed with the Court's ruling. DHS is instead thumbing its nose at a coequal branch of government.

## COUNT 3

### Failure to conduct notice and comment in violation of the APA

37. Florida repeats and incorporates by reference ¶¶ 1–30.

38. The APA requires notice of, and comment on, agency rules that "affect individual rights and obligations." *Chrysler Corp. v. Brown*, 441 U.S. 281, 303 (1979); *see* 5 U.S.C. § 553.

39. As the Court already explained, Op. & Order at 99–102, new release policies like the one at issue here are subject to notice and comment. Nor could DHS possibly have good cause given its own delay and poor planning.

## PRAYER FOR RELIEF

For these reasons, Florida asks the Court to:

a) Expedite this action.

b) Enter a temporary restraining order preventing DHS from enforcing or implementing the new policy.

c) Delay the effective date of the new policy under 5 U.S.C. § 705.

d) Preliminarily and permanently enjoin Defendants from enforcing or implementing the new policy.

e) Hold the new policy unlawful and set it aside under 5 U.S.C. § 706.

f) Issue declaratory relief declaring the new policy unlawful.

g) Award Florida costs and reasonable attorney's fees.

h) Award such other relief as the Court deems equitable and just.

Respectfully submitted,

Ashley Moody
ATTORNEY GENERAL

John Guard (FBN 374600)
CHIEF DEPUTY ATTORNEY GENERAL

*/s/ James H. Percival*
James H. Percival (FBN 1016188)
CHIEF OF STAFF

Henry C. Whitaker (FBN 1031175)
SOLICITOR GENERAL

Natalie P. Christmas (FBN 1019180)
COUNSELOR TO THE ATTORNEY GENERAL

Joseph E. Hart (FBN 124720)
COUNSELOR TO THE ATTORNEY GENERAL

Anita Patel (FBN 70214)
ASSISTANT BUREAU CHIEF

Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
james.percival@myfloridalegal.com

*Counsel for the State of Florida*