UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

STATE OF FLORIDA,

   *Plaintiff*,

   v.                                             Case No. 3:23-cv-9962-TKW-ZCB

ALEJANDRO MAYORKAS, et al.,

   *Defendants*.
_____/

**EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER**

Courts have "long presumed that officials of the Executive Branch will adhere to the law as declared by the court." *Comm. on Judiciary of U.S. House of Reps. v. Miers*, 542 F.3d 909, 911 (D.C. Cir. 2008). This case puts that presumption to the test.

On March 8, 2023, the Court vacated DHS's Parole + Alternatives to Detention Policy (the Parole + ATD Policy). *See* Op. & Order, Doc. 157, *Florida v. United States*, No. 3:21-cv-1066-TKW-ZCB (N.D. Fla. Mar. 8, 2023).[1] The Court did so, among other reasons, because DHS's use of *en masse* parole for operational convenience is plainly contrary to 8 U.S.C. § 1182(d)(5). *See* Op. & Order at 91.

---

[1] All further citations to "Op. & Order" refer to this Court's March 8 Opinion and Order unless otherwise noted.

The Court also concluded that parole policies like Parole + ATD are subject to notice and comment. Op. & Order at 99–102.

If DHS believed that Parole + ATD was operationally important—and if DHS believed the policy could plausibly be defended on appeal—one would have expected the agency to seek an emergency stay, especially given this Court's generous grant of a seven-day stay to facilitate just that. Alternatively, DHS could have taken this Court's remand seriously and developed an alternative policy consistent with this Court's order. *See* Op. & Order at 108 (remanding "for further proceedings consistent with this Opinion and Order").

DHS did neither. Instead, it waited until the day before the Title 42 order expires and then apparently began drafting a new memo authorizing Border Patrol to release aliens *en masse*. A "DHS Spokesperson" went on record with NBC News and described the new policy as follows:

> As Republican and Democratic administrations alike have done in the past to protect the safety and security of Border Patrol agents and migrants in the event of severe overcrowding conditions, U.S. Border Patrol sectors may consider releasing certain migrants who have undergone strict national security and public safety vetting to continue their immigration processes.
>
> This may include processing migrants for parole to reduce the amount of time they spend in custody. Each parole will be considered on an individualized case-by-case basis, and individuals who are released will be required to check in with Immigration and Customs Enforcement and undergo removal proceedings in immigration court. Individuals may be placed into an Alternatives to Detention program to ensure compliance, if deemed appropriate. The targeted use of parole will

allow Border Patrol to focus its resources most effectively to quickly process and remove individuals who do not have a legal basis to remain in the country.[2]

That policy is materially identical to Parole + ATD, which is likely why an anonymous source described it as an attempted "workaround" of this Court's March 8 order.[3]

At this time, Florida does not possess a copy of the policy in question, though the State has asked DHS for it several times. Ex. 1. Meanwhile, Title 42 expires at 11:59 p.m. Eastern daylight time tonight,[4] and DHS is expected to release aliens by the thousands.

Florida seeks a temporary restraining order to preserve the status quo until the parties can brief motions for a preliminary injunction or to postpone the effective date of the new policy. The Biden Administration's behavior, if left unchecked, makes a mockery of our system of justice and our Constitution. Florida asks the

---

[2] Julia Ainsley, *Biden admin to allow for the release of some migrants into the U.S. with no way to track them*, NBC News (May 10, 2023), https://www.nbcnews.com/politics/biden-admin-plans-order-release-migrants-us-no-way-track-rcna83704.

[3] Jennie Taer, *Biden Admin To Release Illegal Immigrants 'En Masse' Without Tracking Technology, Court Dates*, Daily Caller (May 10, 2023), https://dailycaller.com/2023/05/10/biden-admin-to-release-illegal-immigrants-en-masse-without-tracking-technology-court-dates/.

[4] OMB, *Statement of Administration Policy: H.R. 382 and H.J. Res. 7* (Jan. 30, 2023), https://www.whitehouse.gov/wp-content/uploads/2023/01/SAP-H.R.-382-H.J.-Res.-7.pdf (announcing White House plan to let public health emergency expire on May 11).

Court to order a response by 4 p.m. Eastern daylight time and to rule on this motion by 11:59 p.m. Eastern daylight time, when the Title 42 order expires.

## LEGAL STANDARD

A plaintiff seeking a temporary restraining order must establish (1) "that he is likely to succeed on the merits," (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in his favor," and (4) "that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *accord Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (explaining that the same standard applies to temporary restraining orders).[5]

## ARGUMENT

### I. FLORIDA HAS STANDING AND IS IRREPARABLY HARMED BY THE NEW PAROLE POLICY.

As a result of DHS's mismanagement of the border, over a million illegal aliens have been released into the interior of the United States. Op. & Order at 11.[6]

---

[5] Florida emailed counsel for DHS a copy of the complaint in this action. Upon filing of this motion, Florida will immediately provide a copy to counsel for DHS via email. *See* Fed. R. Civ. P. 65(b) (permitting a temporary restraining order upon notice to an adverse party or its attorney).

[6] Florida relies on the Court's Order and Opinion as factual evidence in support of its request for two reasons. First, the facts as the Court found them have preclusive consequences despite the government's appeal of that judgment. *Jaffree v. Wallace*, 837 F.2d 1461, 1467 (11th Cir. 1988) ("The established rule in the federal courts is that a final judgment retains all of its res judicata consequences pending decision of the appeal." (quotations omitted)); *United States v. Stauffer Chem. Co.*, 464 U.S. 165 (1984) (holding that mutual collateral estoppel is applicable against the federal government); *Nixon v. Richey*, 513 F.2d 430, 438 n.75 (D.C. Cir. 1975) (noting that "[t]he federal rule is that pendency of an appeal does not suspend the operation of a final judgment for purposes of collateral estoppel" and collecting authorities). Second, the Rules of Evidence are

4

Well over 100,000 of those illegal aliens ended up in Florida, and the State has paid millions of dollars to provide public benefits to these aliens. Op. & Order at 42–43.

Under the new parole policy announced by DHS, tens of thousands more will be released and will likely make their way to Florida. Florida will continue to expend funds on illegal aliens present in the State in the form of public education, incarceration costs for aliens who commit crimes, unemployment benefits, and emergency Medicaid. Op. & Order at 44–47. Those costs will increase as a result of the new parole policy.

These losses constitute irreparable harm to the State because they "cannot be undone through monetary remedies," *Ferrero v. Associated Materials Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991) (quotations omitted), as the United States has sovereign immunity from damages claims, *see Odebrecht Const., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1289 (11th Cir. 2013).

## II.     INJUNCTIVE RELIEF IS NOT FORECLOSED BY 8 U.S.C. § 1252(F).

Under 8 U.S.C. § 1252(f), a district court may not "enjoin or restrain the operation of the provisions of part IV of this subchapter." *See also Garland v. Aleman Gonzalez*, 142 S. Ct. 2057, 2065 (2022). But DHS relies on the parole

---

relaxed at this procedural stage, and the Court's findings approximate the type of evidence Florida plans to present should this case proceed to trial. *See Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) ("At the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceedings." (quotations omitted)).

authority in 8 U.S.C. § 1182(d)(5), which is in part II of that subchapter not part IV. Thus, preliminary injunctive relief is not precluded by § 1252(f). *See* Op. & Order at 106–07.

### III. FLORIDA IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS.

#### a. *The new parole policy is subject to judicial review.*

##### i. The new parole policy is final agency action.

The APA only permits challenges to "final agency action[s]." 5 U.S.C. § 704. An agency action is final if it "mark[s] the consummation of the agency's decisionmaking process" and is "one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (quotations omitted).

The new parole policy meets this test because it "instructs agents how to exercise their discretionary authority under the parole statute and sets criteria by which aliens are eligible or ineligible for parole." Op. & Order at 67. Further, it establishes new marching orders for agents and determines Florida's obligations to provide benefits to certain aliens, particularly its obligations to provide public education, Medicaid, and unemployment benefits. Op. & Order at 67.

##### ii. The new parole policy is not committed to agency discretion.

The APA exempts from judicial review actions that are "committed to agency discretion," 5 U.S.C. § 701(a)(2)—in other words, where the statute leaves "no

6

meaningful standard against which to judge the agency's exercise of discretion." *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361, 370 (2018) (quotations omitted). The parole authority in § 1182(d)(5) is not unbounded and has meaningful standards. *See Dep't of Com. v. New York*, 139 S. Ct. 2551, 2568 (2019). Further, the Supreme Court has indicated that use of the parole authority is subject to APA review. *See* Op. & Order at 68 (citing *Biden v. Texas*, 142 S. Ct. 2528, 2543 (2022)).

### b. The new parole policy is contrary to law.

Section 1182(d)(5) permits DHS to parole aliens into the United States "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit" and requires that aliens be returned to custody "when the purposes of such parole . . . have been served." The new parole policy is contrary to law for at least three reasons.

First, the new parole policy apparently does not provide a mechanism to return aliens to custody once the parole purpose has been served. According to reports, the new parole policy involves the mass release of aliens in some cases *without any ability to track them*. Ainsley, *supra* note 2. If DHS cannot even track the whereabouts of released aliens, it clearly has no plan to evaluate whether the purposes of parole have been served or return them to custody. *See* Op. & Order at 89–90.

Second, the planned *en masse* parole of over 11,000 aliens at one time suggests that the government is not making parole determinations on a case-by-case basis. Op. & Order at 92–93; Ainsley, *supra* note 2.

Finally, the new parole policy violates § 1182(d)(5)'s requirement that parole only be granted "for urgent humanitarian reasons or significant public benefit." The apparent purpose of this new policy is to create a new processing pathway to decompress foreseeably crowded facilities. That purpose is not consistent with the standards in § 1182(d)(5). Op. & Order at 93–94.

For these reasons, Florida is likely to show that the new parole policy is contrary to law.

### c. *DHS failed to conduct notice and comment.*

The new parole policy is an agency rule affecting legal rights and obligations and thus subject to notice and comment under the APA. Op. & Order at 99–100. The new policy instructs agents how to exercise their discretionary authority, sets criteria for granting parole, and affects Florida's obligations to provide public benefits to certain aliens. Op. & Order at 100.

Further, DHS cannot avoid the notice and comment requirements of 5 U.S.C. § 553 by invoking the "good cause" exception. *See Florida v. Becerra*, 544 F. Supp. 3d 1241, 1295–99 (M.D. Fla. 2021) (discussing the high bar necessary to invoke "good cause" and collecting authorities). This Court vacated the Parole + ATD

policy on March 8, 2023. DHS—knowing it had limited release mechanisms and expecting a surge of traffic at the border—did nothing until the day before the Title 42 order was set to expire. "Good cause cannot arise as a result of the agency's own delay," *Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 114 (2d Cir. 2018), and DHS's delay cannot excuse its failure to conduct notice and comment here.

For these reasons, Florida is likely to succeed on its notice and comment claim.

### d. The new parole policy is arbitrary and capricious.

Under the APA, a court must "hold unlawful and set aside agency action" that is "arbitrary [or] capricious." 5 U.S.C. § 706(2)(A). The new parole policy is arbitrary and capricious because it is a pretextual attempt to circumvent this Court's prior ruling. Instead of approaching the problem in good faith, such as by seeking a stay of this Court's ruling, DHS slapped a new label on the same Parole + ATD Policy that this Court vacated and went about its business. This is the very definition of "capricious." *See Franklin Sav. Ass'n v. Office of Thrift Supervision*, 35 F.3d 1466, 1472 (10th Cir. 1994) ("The [APA] protects from agency action that is arbitrary and capricious or in bad faith.").

## IV. THE BALANCE OF THE EQUITIES AND PUBLIC INTEREST FAVOR PRELIMINARY RELIEF.

The equities and public-interest factors merge for federal government action. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Both favor an injunction here. "[T]he public interest in enforcement of the immigration laws is significant." *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d. 1211, 1221 (D.C. Cir. 1981); *accord Nken*, 556 U.S. at 436 (finding public interest in "prompt execution of removal orders"). And "[f]orcing federal agencies to comply with the law is undoubtedly in the public interest." *Cent. United Life., Inc. v. Burwell*, 128 F. Supp. 3d 321, 330 (D.D.C. 2015).

The public interest favors Florida all the more here because DHS is plainly acting in bad faith and seeking to avoid this Court's previous rulings.

## V. PRECLUSION PRINCIPLES MAY PREVENT DHS FROM MAKING CERTAIN CONTENTIONS.

Mutual collateral estoppel is available against the federal government and would prevent DHS from litigating factual or legal questions actually litigated in the previous cause. *Baez-Sanchez*, 947 F.3d 1033, 1036 (7th Cir. 2020); *see also supra* note 6. While Florida is confident it can support all legal and factual contentions necessary for final judgment, the limited nature of remaining facts and legal issues weighs heavily in favor of temporary relief.

VI.  **NO BOND IS REQUIRED UNDER RULE 65(C).**

"[T]he amount of security . . . is a matter within the discretion of the trial court." *BellSouth Telecomm. v. MCIMetro Access Transmission Servs.*, 425 F.3d 964, 971 (11th Cir. 2005) (quotations omitted); *see Texas v. United States*, 524 F. Supp. 3d 598, 668 (S.D. Tex. 2021) (holding that no security was required for a preliminary injunction barring DHS's 100-day pause on removals).

## CONCLUSION

For the foregoing reasons, the Court should enter a temporary restraining order preventing DHS from implementing the new parole policy or otherwise using § 1182(d)(5) as a tool of operational convenience, to relieve overcrowding, or to facilitate faster processing at the Southwest border. The Court should also set a briefing schedule for preliminary relief and order DHS to provide weekly status reports regarding Border Patrol's use of the parole authority in § 1182(d)(5).

Respectfully submitted,

ASHLEY MOODY
ATTORNEY GENERAL

John Guard (FBN 374600)
CHIEF DEPUTY ATTORNEY GENERAL

*/s/ James H. Percival*
James H. Percival (FBN 1016188)
CHIEF OF STAFF

Henry C. Whitaker (FBN 1031175)
SOLICITOR GENERAL

Natalie P. Christmas (FBN 1019180)
COUNSELOR TO THE ATTORNEY GENERAL

Joseph E. Hart (FBN 124720)
COUNSELOR TO THE ATTORNEY GENERAL

Anita Patel (FBN 70214)
ASSISTANT BUREAU CHIEF

Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
james.percival@myfloridalegal.com

*Counsel for the State of Florida*

## CERTIFICATE OF COMPLIANCE

This motion complies with the requirements of Local Rule 7.1(F) because it contains 2,570 words.

/s/ James H. Percival
Chief of Staff

## CERTIFICATE OF SERVICE

I certify that on May 11, 2023, a true and correct copy of the foregoing was filed with the Court's CM/ECF system and furnished by US Mail to:

Alejandro Mayorkas
Secretary of Homeland Security
U.S. Department of Homeland Security
Office of the General Counsel
2707 Martin Luther King Jr. Ave SE
Washington, DC 20528-0485

United States of America
c/o United States Attorney's Office
Northern District of Florida
Civil Process Clerk - Pensacola Division
21 East Garden Street, Suite 400
Pensacola, FL 32502

Raul Ortiz
Chief, United States Border Patrol
U.S. Customs and Border Protection
Office of Chief Counsel
1300 Pennsylvania Avenue NW, Suite 4.4-B
Washington, D.C. 20229

U.S. Department of Justice
Justice Management Division
950 Pennsylvania Ave., N.W.
Room 1111
Washington, DC 20530

                                              */s/ James H. Percival*
                                              Chief of Staff