**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | | |
|---|---|---|
| STATE OF FLORIDA, | ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | Civil Action No. 3:23-cv-9962 |
| ALEJANDRO MAYORKAS, *et al.,* | ) ) | |
| *Defendants.* | ) ) ) | |

| | | |
|---|---|---|
| STATE OF FLORIDA, | ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | Civil Action No. 3:21-cv-01066 |
| The UNITED STATES OF AMERICA, *et al.,* | ) ) ) | |
| *Defendants.* | ) ) ) | |

**EMERGENCY MOTION TO STAY TEMPORARY RESTRAINING**
**ORDER AND VACATUR PENDING APPEAL**

1

## INTRODUCTION

Defendants hereby move for a stay, pending completion of appellate proceedings, of this Court's orders in *Florida v. United States*, No. 3:21-cv-01066, 2023 WL 2399883 (N.D. Fla. Mar. 8, 2023) (ECF No. 157), vacating the Parole + ATD policy, and the order issued on May 11, 2023 in *Florida v. Mayorkas*, 23-cv-9962 (N.D. Fl.) (ECF No. 10), temporarily enjoining the government's implementation of a policy titled Policy on Parole with Conditions in Limited Circumstances Prior to Issuance of a Charging Document. The Solicitor General has authorized an appeal of both orders, *see* 28 C.F.R. § 0.20(b), and the government has filed a notice to appeal in 21-cv-01066 and will file a notice to appeal in 23-cv-9962, and intends to move to consolidate the two appeals.

Defendants advise the Court that they intend to seek emergency relief from the Eleventh Circuit by Monday, May 15, 2023, at 2:00 pm with respect to their requests to stay both orders if this Court does not grant the requested stays. If, upon reviewing this motion, the Court finds that Defendants have not met the requirements for a stay, Defendants respectfully request that this Court summarily deny the motion without awaiting a response from Plaintiff. In addition, with respect to the Temporary Restraining Order (TRO) enjoining implementation of the Parole with Conditions policy, if the Court declines to enter a stay, Defendants request that the Court formally convert its TRO into a preliminary injunction. *See* ECF No. 10

at 16 n.9. Defendants have notified Plaintiff, which opposes all relief requested in this motion.[1]

As explained below, the balance of harms weighs strongly in favor of a stay of both orders and Defendants respectfully submit that they are likely to prevail on the merits in their appeals in both cases. This Court's vacatur and injunction irreparably harm the United States and the public by frustrating measures that are necessary to secure the border and protect the health and welfare of both migrants and Border Patrol Agents, in light of the significant increase in the number of noncitizens who have arrived and are expected to continue to arrive in the coming days. The Department of Homeland Security (DHS) has identified an exigent situation at the southwest border—record numbers of noncitizens seeking to enter or entering our country without authorization, overwhelming the immigration system—and has planned to use all authorities at its disposal to address these circumstances. But that authority is limited. DHS can no longer expel noncitizens arriving from other countries to Mexico under Title 42 and lacks the resources to detain this record number of arrivals, or the staffing and facilities to safely process and issue charging documents to all these new arrivals in the normal course. And because of this Court's two orders, the government can rely on neither Parole + ATD or Parole with Conditions. In these circumstances, the vacatur coupled with the

---

[1] Plaintiff indicates they will file a response.

injunction leaves DHS only inferior options in the event the number of migrants encountered over the coming days and weeks causes DHS to substantially exceed its detention capacity: for example DHS could apprehend individuals and release them with notices to report (with no accompanying enforcement mechanism) or, in a worst-case scenario, decline to apprehend certain border-crossers altogether. Exhibit A, Declaration of Matthew J. Hudak, at ¶ 22. Releasing noncitizens without fully processing them and imposing conditions requiring them to report back to obtain a Notice to Appear at removal proceedings risks allowing numerous noncitizens to avoid removal proceedings.

The Court should immediately stay its orders to prevent those harmful consequences while the government seeks review in the court of appeals. And the Court should convert its TRO to a preliminary injunction.

## STANDARD OF REVIEW

In deciding a motion to stay an order pending appeal, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009).

## ARGUMENT

### I.  The Balance of Harms Weighs Strongly in Favor of a Stay.

As explained below and in Defendants' previous submissions in these cases, the serious and irreparable harms to the government ability to manage the border—and resulting harms to the public—from the Court's vacatur and injunction orders outweigh any harm that Plaintiff might suffer if the injunction is stayed pending appeal. The Supreme Court reached a similar conclusion when it stayed in full the injunction issued by the lower courts in *Barr v. East Bay Sanctuary Covenant*, 140 S. Ct. 3 (2019), and by other district courts in *Trump v. Hawaii*, No. 17A550, 2017 WL 5987406 (U.S. Dec. 4, 2017), and *Trump v. International Refugee Assistance Project (IRAP)*, No. 17A560, 2017 WL 5987435 (U.S. Dec. 4, 2017). The Supreme Court and Ninth Circuit held similarly when they stayed a preliminary injunction restraining the Migrant Protection Protocols, *Innovation L. Lab v. McAleenan*, 924 F.3d 503, 510 (9th Cir. 2019); *Wolf v. Innovation L. Lab*, 140 S. Ct. 1564 (2020).

In those cases, the Supreme Court and circuit courts necessarily determined that the Government's border-management interests outweighed the plaintiffs' interests. *See Nken*, 556 U.S. at 434. The Government's border-management interests here are equally weighty.  DHS is addressing a surging migration situation at our southwest border—compounded by the termination of the Title 42 public health Order on May 11, 2023—that is overwhelming U.S. Customs and Border

Protection (CBP) facilities, risking widespread health and safety risks to migrants, government employees, and the public. Indeed, this Court recognized as much, agreeing that "[t]he expiration of the Title 42 Order is expected to result in a 'surge' of aliens seeking to enter the country." ECF 10 at 2. The Court's injunction, coupled with its earlier vacatur of the Parole + ATD policy, however, seriously impairs the government's ability to address that very surge.

This Court's orders undermine the Executive Branch's constitutional and statutory authority to use all lawful powers at its disposal to address the challenge at the border. The Executive Branch's actions to protect these interests warrant the utmost deference, particularly where, as here, it acts based on "[p]redictive judgment[s]" regarding the enjoined policies' effect on the border. *Dep't of the Navy v. Egan*, 484 U.S. 518, 529 (1988); *see Trump v. Hawaii*, 138 S. Ct. 2392, 2421-22 (2018); *Holder v. Humanitarian Law Project*, 561 U.S. 1, 33-35 (2010); *see also Jeanty v. Bulger*, 204 F. Supp. 2d 1366, 1380-81 (S.D. Fla. 2002) (standard for reviewing Executive's policies under § 1182(d)(5) is "extremely deferential" and "court must avoid overriding the [agency's] policy determination," regardless of whether the court "agree[s] with the policymaker's choice []or approve[s] of the policy reasons underlying it"), *aff'd*, 321 F.3d 1336 (11th Cir. 2003). Thus, a stay pending appeal is appropriate where an injunction "is not merely an erroneous adjudication of a lawsuit between private litigants, but an improper intrusion by a

federal court into the workings of a coordinate branch of the Government." *INS v. Legalization Assistance Project*, 510 U.S. 1301, 1305-06 (1993) (O'Connor, J., in chambers); *see Heckler v. Lopez*, 463 U.S. 1328, 1330 (1983) (Rehnquist, J., in chambers).

The Court's orders preventing two of the government's chosen means of addressing the rapidly evolving post-Title 42 migration situation's effect on border enforcement and CBP facilities impose irreparable harm on the government and the public, as previously explained. ECF No. 9 at 1-5, 32-39; ECF No. 9-2 at ¶¶ 6-22. The orders frustrate the "public interest in effective measures to prevent the entry of" unauthorized migrants at the Nation's borders, *United States v. Cortez*, 449 U.S. 411, 421 n.4 (1981), by significantly limiting options for releasing individuals posing no threat to public safety so that resources may be deployed on more pressing public safety and national security threats.

The most immediate consequence of the court's orders will likely be overcrowding in detention facilities. Overcrowding inflicts harm on migrants in government custody, and the public at large, by limiting DHS's ability to address any further dangerous overcrowding conditions that may arise and the attendant risks to health, safety, and security. *Cf., e.g.*, *Brown v. Plata*, 563 U.S. 493, 502 (2011) ("Overcrowding has overtaken the limited resources of prison staff; imposed demands well beyond the capacity of medical and mental health facilities; and

created unsanitary and unsafe conditions that make progress in the provision of care difficult or impossible to achieve."); *Pitts v. Thornburgh*, 866 F.2d 1450, 1456 (D.C. Cir. 1989 ("seeking to reduce prison overcrowding is surely an important government interest"). The public interest is served by allowing CBP officials to deploy their judgment during this dynamic situation, and use all tools at their disposal to ensure the Departments' continued ability to safely, effectively, and humanely enforce and administer U.S. immigration law, including through the government's well-settled discretionary parole authority under 8 U.S.C. § 1182(d)(5). *Cf. Leng May Ma v. Barber*, 357 U.S. 185, 190 (1958) (observing that the INS's parole policy, designed to avoid "needless confinement" of certain noncitizens, "reflect[ed] the humane qualities of an enlightened civilization").

As explained in the Declarations of Matthew J. Hudak, ECF 9-2 and Exhibit A, the orders block parole processes deemed necessary by DHS to address the skyrocketing number of encounters at the southwest border, which has overwhelmed CBP capacity well beyond its limits. ECF 9-2 at ¶¶ 9-10. Those processes allow CPB to more expeditiously process noncitizens for release by avoiding the significantly more time-consuming process of issuing a Notice to Appear consistent with regimented documentary and notice requirements. Exhibit A at ¶¶ 12-13. At the time of this Court's recent order, 27,000 noncitizens were in CBP custody, already dangerously high. *Id.* If the orders remain in place and those

numbers increase even further, it could jeopardize the health and safety of noncitizens and CBP officers alike. *Id.*, ¶ 14.

The orders also risk overwhelming ICE's detention capacity. Exhibit B, Daniel Bible at ¶ 11. As of May 10, 2023, ICE had 21,967 noncitizens in custody, comprising approximately 64% of its 34,000 funded beds. The available bedspace is the result of ICE's proactive effort to reduce its population by conducting a case-by-case review and, when appropriate, releasing or removing noncitizens, in order to prepare for the lifting of Title 42 on May 11, 2023. *Id*. The purpose of this move was to enable ERO to continue with its interior enforcement mission and ensure sufficient detention bedspace remains available for public safety threats, national security threats, and others found not suitable for parole by CBP. *Id*. For ERO to continue delivering consequences for unlawful migration and securing the most dangerous noncitizens, CBP needs access to all available processing pathways. *Id*.

To alleviate overcrowding, DHS will likely have to resort to other forms of release that are substantially less effective than Parole + ATD or Parole with Conditions in ensuring that noncitizens, following their release, appear at ICE offices to receive their Notices to Appear. Those options potentially include (1) releasing noncitizens with notices to report to an ICE office in the future, but without imposing conditions requiring them to do so, or (2) in a worst-case scenario, not apprehending certain noncitizens at all. *Id.*, ¶¶ 17-21; Exhibit A at ¶ 23. Release

without conditions provides less incentive for noncitizens to make an appointment with Immigration and Customs Enforcement (ICE) or request a Notice to Appear. Transnational criminal organizations may message that CPB is releasing without enforcement which may increase encounter rates. *Id*. ¶ 22(a). And failing to apprehend altogether would present enormous public safety and national security concerns. *Id.* When individuals are not apprehended by USBP there is a possibility that those individuals will simply enter the United States. Included within any such group that CBP is unable to apprehend could be those linked with terrorist organizations, those with criminal records, human smugglers, those actively trafficking other members of the same group, and vulnerable children not accompanied by their parents, as well as those entering seeking protections like asylum. *Id*. ¶ 22(b). Without processing individuals, it is impossible to know the demographics, vulnerabilities, and national or public safety risk of those individuals entering the United States. *Id*.

Moreover, the significant harms the United States faces as a result of the court's orders and the unavailability of Parole with Conditions and Parole + ATD as a processing option significantly outweigh any harm the State of Florida may face from a stay pending appeal. Florida asserts nothing more than speculative injuries "in terms of money, time and energy"—but those are not irreparable injuries, if they are cognizable at all, that can outweigh the harms caused to the

United States by the court's orders. *Sampson v. Murray*, 415 U.S. 61, 90 (1974).

Any alleged error from not engaging in notice and comment rulemaking is likewise

insufficient. *See Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987). In

any event, even if Plaintiff's alleged harms are credited, they could not begin to

outweigh the harm imposed by "injunctive relief [that] deeply intrudes into the core

concerns of the executive branch," *Adams v. Vance*, 570 F.2d 950, 954 (D.C. Cir.

1978), and undermines the "efficient administration of the immigration laws at the

border," *Innovation Law Lab v. McAleenan*, 924 F.3d 503, 510 (9th Cir. 2019).

## II. Defendants Are Likely to Prevail on the Merits.

Recognizing that this Court has reached a contrary conclusion in both cases,

Defendants respectfully submit that a stay pending appeal is further warranted

because Defendants are likely to succeed on the merits of their appeal of the vacatur

in *Florida v. United States*, No. 3:21-cv-01066, 2023 WL 2399883 (N.D. Fla. Mar.

8, 2023) (ECF No. 157), and the injunctive order issued on May 11, 2023 in *Florida*

*v. Mayorkas*, 23-cv-9962 (N.D. Fl.) (ECF No. 10). *See Nken*, 556 U.S. at 434.

Moreover, because the balance of equities so overwhelmingly favors the

government, a stay may be "granted upon a lesser showing of a substantial case on

the merits." *LabMD, Inc. v. Federal Trade Comm'n*, 678 F. App'x 816, 819 (11th

Cir. 2016) (quoting *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986));

*see also Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1232 (11th Cir. 2005).

Specifically, as Defendants explained in their opposition to Plaintiff's motion for a temporary restraining order in 23-cv-9962, and in their post-trial brief in 21-cv-1066, and incorporate here by reference, Plaintiff lacks standing to challenge immigration policies with allegedly indirect effects on the State's fisc. ECF 156 at 67-1475, 21-cv-1066. Plaintiff's statutory claim with respect to Parole + ATD and Parole with Conditions fails, as the challenged policies are consistent with and authorized by the parole statute. ECF No. 9 at 19-25, 23-cv-9962; ECF 156 at 100-14, 21-cv-1066. Plaintiff's substantive Administrative Procedure Act (APA) claim fails because the policies are reasonable and reasonably explained. *Id.* at 26-28; ECF 156 at 114-22, 21-cv-1066. And Plaintiff's procedural APA claim fails because the policies are excused from the APA's notice-and-comment rulemaking procedures. *Id.* at 28-36; ECF 156 at 122-26, 21-cv-1066

In any event, the court lacked authority to issue the TRO in *Florida v. Mayorkas*, 23-cv-9962 (N.D. Fl.) (ECF No. 10), and the vacatur in *Florida v. United States*, No. 3:21-cv-01066, 2023 WL 2399883 (N.D. Fla. Mar. 8, 2023) (ECF No. 157). Section 1252(f) of title 8—which bars courts from "enjoin[ing] or restrain[ing] the operation of" sections 1221-31 of the Immigration and Nationality Act (INA)—precludes injunctive relief, or relief that functions like an injunction, like a vacatur, interfering with the government's chosen means of operating section

1225(b), as implemented by the policies. *See Garland v. Aleman Gonzalez*, 142 S. Ct. 2057, 2064–65 (2022).

To be sure, the Court's injunction and vacatur appear superficially to enjoin the government's chosen means of implementing section 1182(d)(5), which is not a covered provision. But section 1182(d)(5) is how the government implements the detention provisions of section 1225(b). *See Biden v. Texas*, 142 S. Ct. 2528, 2543 (2022); *Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018). The parole statute explicitly states that parole is available only for *applicants for admission*, and thus parole under section 1182(d)(5) is the mechanism for releasing noncitizens detained pursuant to section 1225(b), which also governs "applicants for admission." 8 U.S.C. §§ 1182(d)(5)(A); 1225(a), (b). The injunction and the vacatur, however, place limitations on the government's use of section 1182(d)(5), and that necessarily "restrain[s] the operation of" section 1225.

Accordingly, the injunction and vacatur both interfere with the government's chosen means of implementing section 1225 by preventing DHS from making a decision to release an individual subject to section 1225 as prescribed by the policies. Again, that the policies involve parole under section 1182(d)(5) does not matter, given that they are the way in which DHS *operationalizes* decisions to detain under section 1225, and are "the way that [section 1225 is] being carried out." *Aleman Gonzalez*, 142 S. Ct. at 2064. Indeed, "the 'operation of' the relevant

statutes is best understood to refer to the Government's efforts to enforce or implement them." *Id.* The injunction and vacatur thus would impermissibly compel CBP officers "to take actions that (in the Government's view) are not required by" sections 1225 "and to refrain from actions that (again in the Government's view) are allowed by" that provision. *Id.* at 2066.

The orders were also barred by 8 U.S.C. § 1252(a)(2)(B)(ii), which strips courts of jurisdiction over any challenge concerning a "decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." That provision bars review not just of the individual parole decisions at issue here, but the policy implementing them. *Cf. Patel v. Garland*, 142 S. Ct. 1614, 1622 (2022) (holding that section 1252(a)(2)(B)(i), which bars jurisdiction to review "any judgment regarding the granting of relief" under certain INA provisions bars review of "judgments of whatever kind" covered by the statute, "not just discretionary judgments or the last-in-time judgment," and so "encompasses not just the granting of relief but also any judgment relating to the granting of relief"); *see also Jeanty*, 204 F. Supp. 2d at 1382 (holding that 1252(a)(2)(B)(ii) precluded review of plaintiffs' substantive APA challenge to parole determinations).

Finally, the orders are overbroad and must be narrowed. The orders exceed

the court's Article III authority, which requires that "[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury," *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018); *see Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (same, rule in equity). Immigration law is not a special context that warrants a different rule. "[A]ll injunctions—even ones involving national policies—must be narrowly tailored to remedy the specific harm shown." *East Bay Sanctuary Covenant v. Barr*, 934 F.3d 1026, 1029 (9th Cir. 2019). Even assuming Plaintiffs' asserted harms warrant any relief touching upon the Parole with Conditions or Parole + ATD processes, Florida fails to show that "complete relief" could not be provided to it by an order limited to precluding DHS's implementation of the two policies as to noncitizens indicating a final address in Florida. *See. Georgia v. President of the United States*, 46 F.4th 1283, 1308 (11th Cir. 2022) ("injunction—extending nationwide and without distinction to plaintiffs and nonparties alike—was overbroad").

## III.   The Court should formally convert its TRO into a preliminary injunction.

If the Court declines to stay its TRO order issued in *Florida v. Mayorkas*, No. 23-cv-9962, Defendants respectfully request that the Court formally convert its TRO into a preliminary injunction pursuant to Fed. R. Civ. P. 65(b)(2), as the Court suggested in its order. ECF 10 at 16 n.9. Although the government is of the view that the TRO is immediately appealable already, *Pearson v. Kemp*, 831 F. App'x

467, 471 (11th Cir. 2020); *Schiavo*, 403 F.3d at 1225, formal conversion to a preliminary injunction at this stage would nevertheless advance judicial economy. Defendants "have no other evidence or argument that they think might change the Court's mind on application of the preliminary injunction factors." ECF 10 at 16 n.9. This is because the same standard governs granting a preliminary injunction as a temporary restraining order. *Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir. 1995). Pursuant to this standard, the Court has already assessed the May 10, 2023 memorandum and determined Florida is likely to succeed on the merits of its APA claims for the reasons stated, that Florida will suffer irreparable harm absent an injunction against Parole With Conditions while this litigation proceeds, and that the balance of equities supports this relief. Given that these are the same factors the Court would consider in its preliminary injunction determination, *id.*, it has made all the requisite legal determinations to support a preliminary injunction, and formally converting the TRO at this stage would conserve the Court's and parties resources from redundant litigation.

There are no additional legal issues for the Court to resolve, and Defendants believe there is no further factual development that can occur prior to the preliminary injunction hearing that would have any material effect on the outcome. There is no additional evidence necessary or appropriate to judge the merits of Florida's APA claims, which depend on analysis of an administrative record that

16

Defendants would not have time to prepare, certify, and provide to the Court and the parties before the preliminary injunction hearing in any event. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985).

Defendants advised Florida of their intent to move for immediate conversion to a preliminary injunction on May 12, 2023, and counsel for Florida stated that they opposed this request, primarily due to the desire to have the Court's findings in the *Florida* case added to the record for appeal. However, there is no need to expend more of this Court's resources for that purpose, because the Eleventh Circuit has access to and can take judicial notice of the *Florida* opinion. Indeed, the government intends to move to consolidate the two appeals, which involve many overlapping issues.

## CONCLUSION

For the reasons stated above and in Defendants' prior briefing, Defendants respectfully request that the Court grant a stay pending appeal of both orders, and formally convert the TRO issued on May 11, 2023 into a preliminary injunction.

//

//

Date:  May 12, 2023

JASON R. COODY
*United States Attorney*

MARIE A. MOYLE
*Assistant United States Attorney*
Northern District of Florida

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court Section

EREZ REUVENI
*Assistant Director*

/s/ *Joseph A. Darrow*
JOSEPH A. DARROW
ERIN T. RYAN
ELISSA FUDIM
*Trial Attorneys*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 598-7537
Joseph.a.darrow@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 12, 2023, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which provided an electronic notice and electronic link of the same to all attorneys of record.

> By: /s/ Joseph A. Darrow
> JOSEPH A. DARROW
> Trial Attorney
> United States Department of Justice
> Civil Division

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Local Rule 7.1(F) because, excluding parts of the document exempted by the Rule, it contains 3,760 words.

I further certify that a conference of counsel pursuant to Local Rule 7.1(B) was held on May 12, 2023, but it was unsuccessful in resolving the issues absent litigation.

> By: /s/ Joseph A. Darrow
> JOSEPH A. DARROW
> Trial Attorney
> United States Department of Justice
> Civil Division