UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| STATE OF FLORIDA, <br><br> *Plaintiff,* <br><br> v. <br><br> ALEJANDRO MAYORKAS, <br> Secretary of the <br> Department of Homeland Security, <br> in his official capacity; *et. al* <br><br> *Defendants.* | Civil Action No. 3:22-cv-9962 |

**DECLARATION OF DAVID S. BEMILLER**

I, David S. BeMiller, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and documents and information made known or available to me as of the time of signature from official records and reasonably relied upon in the course of my employment, hereby declare as follows:

1. I am employed with the U.S. Customs and Border Protection (CBP) as the Chief Law Enforcement and Operations Directorate (LEOD), of the United States Border Patrol (USBP). I have been employed in this role since October 14, 2022. I began my career with the USBP in 1998 as a USBP Agent in Nogales, Arizona.

2. In my position as the Chief of LEOD, I am responsible for supporting the enforcement operations of USBP. USBP is the primary federal law enforcement organization responsible for preventing the entry of terrorists and their weapons and for preventing the illicit trafficking of people and contraband between ports of entry. In my role as Chief of

1

the Law Enforcement Operations Directorate, I am responsible for executing the mission of CBP's subcomponent, USBP. In this position, I have managerial oversight of more than 22,078 employees within 20 major field Sectors, 128 stations, along the northern and southern borders of the United States.  As the Chief of LEOD, I am also responsible for facilitating operational strategy.

3. I am familiar with the *Policy on Parole with Conditions in Limited Circumstances Prior to Issuance of a Charging Document*, Raul L. Ortiz (May 10, 2023), as well as the implementing guidance to the field.

4. I also understand that on May 11, 2023, the U.S. District Court for the Northern District of Florida, Pensacola Division, issued a temporary restraining order (TRO) enjoining the *Policy on Parole with Conditions in Limited Circumstances Prior to Issuance of a Charging Document* memorandum to take into effect at 11:59pm Eastern Time (ET) on May 11, 2023.

5. I am familiar with the field guidance that was sent on Thursday, May 11, 2023, at 10:57 pm ET instructing all USBP Field Chiefs and their Deputies regarding the TRO mentioned in paragraph 4.  It is attached to this Declaration as Exhibit A.

6. As outlined in Exhibit A, Border Patrol took swift action to inform the field of the requirements of the Court's order. Although the Court's order went into effect at 11:59 pm ET, Border Patrol affirmatively required all processing of individuals for Parole with Conditions to cease at 11:45 pm ET to seek to ensure that no individuals were processed for Parole with Conditions contrary to the Court's order.

7. I submit this declaration to inform the Court of how CBP utilized Parole with Conditions and sought to comply with the TRO and to cease the Parole with Conditions pathway by May 11, 2023 11:59 pm ET, as required by the Court's Order of May 15, 2023.

8. Under the Parole with Conditions memorandum, from its time of implementation on May 10, 2023, until 11:45pm ET on May 11, 2023, USBP utilized Parole with Conditions for 6,413 noncitizens.

9. Border Patrol is finished with immigration processing when the last immigration document, here the Form I-94, an admission number/record for parole, has been signed and issued. Individuals for whom Border Patrol has completed all necessary documents are referred to as "fully processed." These individuals have been granted parole effective as of the time they are fully processed. No further steps are required to effectuate the grant of parole.

10. Once an individual is fully processed, Border Patrol then goes through steps to safely release individuals consistent with local policies and procedures. For instance, Border Patrol does not generally release individuals overnight given the safety risks attendant to such releases.

11. As outlined in Exhibit A, as of 11:30 pm ET on May 11, 2023, all noncitizens who were not fully processed for Parole with Conditions were to be reprocessed for a different Title 8 processing pathway.

12. As outlined in Exhibit A, as of 11:45 pm ET on May 11, 2023, all processing for Parole with Conditions was to be ceased completely, and no noncitizen continued to be processed under Parole with Conditions.

13. Based on our review to date, it appears that the instructions in Exhibit A generally were followed by the field. As explained below, however, an initial review of the data indicates that some individuals may have had their parole processing completed after 11:59 pm on May 11. We are actively reviewing the data to seek to determine whether the individuals were in fact processed after 11:59 pm on May 11 and if so how that occurred contrary to the instructions to the field and the Court's order.

    a. Specifically, the team responsible for reviewing these records has found 167 individuals in the system whose time of process completion is not prior to 11:59 pm on 5/11/2023. Of those, 130 do not have a process completion time, but have been released from custody. The remaining 37 individuals have a process completion time that is after 11:59 pm on 5/11/2023. A manual review, however, is required to determine whether or not any or all of those individuals were, in fact, processed for Parole with Conditions after 11:59 pm on 5/11/2023. For instance, a manual review of the A-file is necessary to determine if the individual was reprocessed for an NTA but that the agent processing inadvertently did not update the final disposition to reflect the change. That manual review has already begun and will be completed as expeditiously as possible. In my professional opinion, I expect this review will take 48 hours to complete.

14.

15. Some individuals who were fully processed for Parole with Conditions as of 11:45pm ET on May 11, 2023, were released on May 12, 2023, consistent with the USBP's normal release procedures.

a. As of May 11, 2023, 11:59 pm ET, CBP systems show 2,576 noncitizens in its custody who were fully processed for Parole with Conditions. When the court issued its TRO, all sectors had ceased releases for the day for any noncitizens who were fully processed. Consequently, USBP released on May 12, 2023 these noncitizens who had already been fully processed prior to the time the TRO took effect.

b. The systems also show one individual as released on parole with conditions on 5/13/2023 and another on 5/14/2023. However, upon further review, Border Patrol has determined that this was a data entry error. Each of these individuals was process complete before the Court's order, one complete on 5/10/2023 and the other on 5/11/2023. During the normal process of ensuring that all individuals who depart Border Patrol custody are appropriately documented as departed it was discovered these two individuals were no longer in custody, but had not been recorded as such. Thus, there are two individuals whose records show that they were not released until 5/13/2023 and 5/14/2023 due to data errors but actually left Border Patrol custody prior to 5/12/2023. Border Patrol is currently updating the data to reflect the accurate date of release but I provide the Court with this information out of an abundance of caution.

c. As stated, the Border Patrol systems currently show that Border Patrol processed 6,413 individuals for Parole with Conditions. Of those, the Border Patrol systems currently show that 2,576 were released on May 12, 2023, or later. It is important to understand that the systems information is constantly being reviewed, for instance, for accuracy. Thus, numbers may shift as quality control checks are

conducted. Moreover, this information is the best information that the individuals responsible for gathering such information is able to pull given the limited time available. However, pulling information from Border Patrol systems can be complex. Moreover, this particular pull of information is complicated because it is not a pre-developed report and requires manual review.

16. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief, as of the time of signature.

Executed this 15th day of May, 2023.

_____
David S. BeMiller
Chief of the Law Enforcement Operations Directorate
U.S. Border Patrol
U.S. Customs and Border Protection
U.S. Department of Homeland Security