UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

STATE OF FLORIDA,

    Plaintiff,

v.                                                  Case No. 3:23cv9962-TKW-ZCB

ALEJANDRO MAYORKAS, et al.,

    Defendants.
_____/

## ORDER DENYING STAY

This case is before the Court based on Defendants' emergency motion to stay (Doc. 13) and Florida's response in opposition (Doc. 21). Upon due consideration of these filings, the parties' stipulation (Doc. 16), and the entire case file, the Court finds for the reasons that follow that the motion to stay is due to be denied.

### Background

On Wednesday, May 10, 2023, Florida filed suit against Defendants (collectively, "DHS"), alleging that "DHS plans to immediately restart the *en masse* parole of aliens at the Southwest Border." Doc. 1 at 2 (¶6) (citing an NBC news article[1] quoting a DHS spokesperson's summary of the plan). The following day,

---

[1] Julie Ainsley, *Biden admin to allow for the release of some migrants into the U.S. with no way to track them*, https://www.nbcnews.com/politics/biden-admin-plans-order-release-migrants-us-no-way-trackrcna83704, *NBC News*, May 10, 2023.

Florida filed a motion for a temporary restraining order (TRO) "preventing DHS from implementing the new parole policy or otherwise using [8 U.S.C.] §1182(d)(5) as a tool of operational convenience, to relieve overcrowding, or to facilitate faster processing at the Southwest border." Doc. 2 at 11. The motion was briefed on an expedited basis, and at 8:45 p.m. CDT on Thursday, May 11, the Court granted Florida's motion and entered a TRO. *See* Doc. 10.

The TRO "enjoined [DHS] from implementing or enforcing the parole policy contained in the May 10, 2023, Memorandum[2] from U.S. Border Patrol Chief Raul Ortiz, titled 'Policy on Parole with Conditions in Limited Circumstances Prior to Issuance of a Charging Document (Parole with Conditions).'" *Id.* at 16 (¶1). The Order took effect at 11:59 p.m. eastern time and, in accordance with Fed. R. Civ. P. 65(b)(2), it is only effective for a period of 14 days. *Id.* (¶¶2, 3). The Court scheduled a hearing for this Friday, May 19, to determine whether to convert the TRO into a preliminary injunction. *Id.* (¶4).

On Friday, May 12, at 10:36 p.m., DHS filed a single motion to stay both the TRO in this case and the March 2023 judgment in *Florida v. United States*, Case No. 3:21cv1066, which vacated a parole policy known as Parole+ATD. On Saturday, the Court summarily denied the motion to stay the judgment in the *Florida*

---

[2] It is undisputed that this memorandum (Doc. 5-1) was what created the policy described in the NBC News article referenced in the complaint and that it is the policy challenged by Florida in this case. The parties refer to this policy as the "Parole with Conditions" policy.

2

case because it was "borderline frivolous" and it "defie[d] credibility" for DHS to claim that it would suffer irreparable harm if the judgment was not stayed since DHS waited 58 days to appeal the judgment (and 65 days to request a stay) and a DHS official submitted a sworn declaration in this case stating that DHS had stopped using the Parole+ATD policy in January 2023, before the Court vacated it. *See Florida v. United States*, Case No. 3:21cv1066, ECF No. 165 (May 13, 2023). However, the Court noted in a separate order (also entered on Saturday) that "there are different factual and procedural considerations at play" in this case and that "the motion [to stay] at least presents a non-frivolous argument as to why a stay of the TRO might be warranted." Doc. 15 at 2. Thus, the Court directed Florida to respond to the motion to stay on an expedited basis—by noon today. *Id.* at 3 (¶1).

Florida timely filed its response, so the motion to stay in this case is now ripe for resolution. No hearing is necessary to rule on the motion.

## Analysis

When ruling on a motion for a stay pending appeal,[3] the Court must consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed

---

[3] An appeal has not yet been filed in this case. It is unlikely that an appeal can be filed at this point because a TRO is generally not appealable and the Court intends to separately enter a preliminary injunction within a day or so, after considering the proposed orders (Docs. 22, 24) submitted by the parties earlier today. *See McDougald v. Jenson*, 786 F.2d 1465, 1472-73 (11th Cir. 1986). However, because the parties have stipulated that the Court can covert the TRO into a preliminary injunction without further proceedings—and because DHS threatened to seek relief in the Eleventh Circuit if the Court did not promptly rule on its motion to stay—the Court finds that it is in the interest of justice for the Court to rule on the motion to stay at this time even though no

3

on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1370 (11th Cir. 2022) (quoting *Nken v. Holder*, 556 U.S. 418, 425-26 (2009)). "The first two factors … are the most critical." *Nken*, 556 U.S. at 434.

Here, as in the *Florida* case, the Court finds that none of the factors weigh in favor of granting a stay.

## Likelihood of Success on the Merits

With respect to the first factor (likelihood of success), for the same reason that the Court found in the TRO that Florida was likely to succeed on its challenge to the Parole with Conditions policy, the Court finds that DHS is not likely to succeed in its appeal of the order enjoining that policy.[4] The Parole with Conditions policy is "materially indistinguishable" from the Parole+ATD policy vacated in *Florida*, and

---

appeal has been filed. If and when DHS appeals the forthcoming preliminary injunction, this Order shall be deemed to have denied any request to stay the preliminary injunction.

[4] DHS argues that it only needs to show that it has a "substantial case on the merits" (rather than the normal "strong showing" of a likelihood of success on appeal) "because the balance of equities so overwhelmingly favors the government," Doc. 13 at 11 (citing *LabMD, Inc. v. Federal Trade Comm'n*, 678 F. App'x 816, 819 (11th Cir. 2016)). However, for the same reasons that DHS has not shown that it will be irreparably harmed if a stay is not granted, it has not shown that the balance of equities weighs in its favor. And even if the lower "substantial case on the merits" standard applies, the Court finds that DHS has not met that standard for the reasons discussed below.

for the same reasons that the narrow authority in the parole statute, 8 U.S.C. §1182(d)(5)(A),[5] did not authorize the Parole+ATD policy, it does not authorize the Parole with Conditions policy. *See Florida v. United States*, 2023 WL 2399883, at *29-31 (N.D. Fla. Mar. 8, 2023) (explaining why the Parole+ATD policy is "contrary to law").

Like the Parole+ATD policy, the Parole with Conditions policy is a "processing pathway" designed to relieve overcrowding at Border Patrol facilities and release large numbers of aliens into the country on "parole" without even initiating immigration proceedings. *See* Doc. 5-1 at 3 (explaining that the policy is an "additional mechanism[] to ensure that individual noncitizens are processed expeditiously and released from or transferred out of [U.S. Border Patrol] custody in a safe, swift, humane, and orderly fashion"). The Parole with Conditions policy operates in precisely the same manner as the Parole+ATD policy—by allowing immigration officials to "parole" arriving aliens into the country on the condition that they schedule an appointment at an Immigration and Customs Enforcement (ICE) facility (or check-in online) within a specified period to be placed in an

---

[5] This statute provides in pertinent part that "[t]he Attorney General may … in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, … and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. §1182(d)(5)(A).

5

immigration proceeding.[6]  And, like the Parole+ATD policy, the Parole with Conditions policy contravenes the plain language of the parole statute because even though it pays lip service to the "case-by-case" requirement in the statute, it does not require the alien to be "returned to custody" "forthwith" "when the purposes of such parole … have been served," and there is no "case" to "continue to be dealt with" even if the alien was returned to custody because an immigration "case" is not even initiated until the alien is issued a notice to appear when (or if) he or she reports to or checks-in with ICE.  Moreover, the fact that the Parole with Conditions policy allows "paroled" aliens to check-in with ICE online and receive a Notice to Appear by mail all but ensures that the aliens will not be taken back into custody after the purpose of the parole (i.e., being issued a Notice to Appear) has been served.

The Court did not overlook DHS's arguments that it is likely to succeed on appeal of the TRO because Florida lacks standing to challenge the Parole with Conditions policy and because Florida's substantive and procedural challenges to that policy under the Administrative Procedure Act (APA) are destined to fail.  The

---

[6] As pointed out in the TRO, one difference between the Parole with Conditions policy and the Parole+ATD policy is that aliens were required to check-in with ICE in 15 days under the Parole+ATD policy, but they are given 60 days under the Parole with Conditions policy.  *See* Doc. 10 at 8 n.4. Another difference is that the Parole+ATD policy required the alien to actually report to an ICE facility whereas the Parole with Conditions policy only requires the alien to "schedule an appointment" (or check-in online) with ICE.  Those differences do not do anything to help bolster the legality of the Parole with Conditions policy—and, if anything, they seem likely to cause more problems down the road and require DHS to spend additional time and money tracking down aliens who fail to check in with ICE as it was forced to do in the "Operation Horizon" program discussed in the *Florida* decision.  *See Florida*, 2023 WL 2399883, at *11.

Court rejects those arguments because they are no more persuasive with respect to the Parole with Conditions policy than they were with respect to the materially identical Parole+ATD policy at issue in the *Florida* case, *see* 2023 WL 2399883, at *16-20, 29-31, 23-33, and the new "notice and comment" arguments are unpersuasive for the reasons stated in the TRO, *see* Doc. 10 at 8 n.5.  Moreover, as Florida argues, Doc. 21 at 10-11, DHS is unlikely to succeed on its argument that Florida lacks standing to challenge the Parole with Conditions policy because, based on the evidence presented in the *Florida* case, it is reasonable to expect that the Parole with Conditions policy will have the same impact on Florida as did the Parole+ATD and non-detention policies at issue in the *Florida* case.[7]

The Court also did not overlook DHS's argument that it is likely to succeed on appeal because the Court lacked the authority to issue a TRO based on 8 U.S.C. §§1252(f)(1) and 1252(a)(B)(ii).  Doc. 13 at 12-14.  Putting aside the fact that DHS did not make these arguments in its response in opposition to the TRO, the Court finds that these arguments are unpersuasive for the same reasons that the Court

---

[7] The Court did not overlook DHS's argument that the standing evidence in *Florida* related to a different policy and a different timeframe, *see* Doc. 16 at 3, but by the time that case went to trial, there was several years' worth of data showing the number of aliens who had been paroled or otherwise released into Florida.  Here, the Parole with Conditions policy was enjoined the day after it was implemented, but there is no reason to believe that the policy would not have similarly resulted in aliens who otherwise should have been detained being "paroled" into Florida if it had not been enjoined.

7

rejected them in the *Florida* case. *See Florida*, 2023 WL 2399883, at *21, 34-35; *Florida v. United States*, 2022 WL 2431414, at *11 (N.D. Fla. May 4, 2022).

Finally, the Court did not overlook DHS's argument that it is likely to succeed on appeal because the TRO is overbroad since Florida could be provided "'complete relief' … by an order limited to precluding DHS's implementation of the [Parole with Conditions policy] as to noncitizens indicating a final address in Florida." *See* Doc. 13 at 15. The Court finds this argument unpersuasive for the same reason that the Court determined in the *Florida* case that partial vacatur of the Parole+ATD policy would not provide "complete relief" to Florida. *See Florida*, 2023 WL 2399883, at *34 ("Once released at the Southwest Border, aliens are free to travel throughout the United States. If the Court were to adopt DHS's request—which would essentially involve DHS asking aliens where they are going and applying the challenged policies to aliens who don't respond with "Florida"—released aliens would be free to travel to Florida. Moreover, if DHS only detained applicants for admission who say they are traveling to Florida and released other aliens, the Court expects that it would not take long for immigration law violators to figure out how to ensure their own release.") (internal citation omitted).

<u>Injury to the Movant if a Stay is Denied</u>

With respect to the second factor (injury to the movant), the essence of DHS's argument is that it will be unable to handle the expected post-Title 42 Order "surge"

8

of aliens arriving at the Southwest Boarder without the ability to quickly "parole" them into the country under the Parole with Conditions policy.  The Court finds that argument unpersuasive for several reasons.

First and foremost, the Court does not give much weight to the declaration relied on by DHS to support this argument because some of the representations in the declaration are directly contradicted by public statements made by the DHS Secretary.  For example, before the Title 42 Order expired, the DHS Secretary reportedly stated that only "a fraction of the people that we encounter" would be paroled into the country and that "the vast majority will be addressed in our border patrol facilities and our ICE detention facilities."[8]  And, after the Title 42 Order expired, the DHS Secretary reportedly stated that the number of aliens encountered at the Southwest Border "are markedly down over what they were prior to the end of Title 42."[9]  Thus, it appears that DHS's inability to release aliens under the Parole with Conditions policy is not as big of a deal as it was made out to be in the declaration attached to the motion to stay.[10]

---

[8] These comments were reported in the NBC news article referenced in the complaint. *See* note 1, *supra*.

[9] Nouran Salahieh, *End of Title 42 immigration policy brought fewer migrants than expected, but communities are still on high alert*, CNN, May 14, 2023 (https://www.cnn.com/2023/05/14/us/title-42-border-immigration-sunday/index.html).

[10] The parties were given an opportunity to explain why the Court could not at least take judicial notice of the public statements that have been attributed to the DHS Secretary about the lower-than-expected number of encounters in evaluating the weight of the evidence currently

9

Second, DHS made similar dire predictions in the *Florida* case. It argued that vacatur of the Parole+ATD policy would have "disastrous consequences … starting the day after [the policy] was ended." *Florida v. United States*, Case No. 3:21cv1066, ECF No 151 at 184. That, however, did not happen, and it has now come to light that DHS stopped using the Parole+ATD policy several months <u>before</u> the Court vacated it.[11] If the sky did not fall then, the Court has no reason to believe that the sky will fall now—despite what the DHS witness claims in his declaration.

---

before the Court. Florida stated that it had no objection to the Court doing so and DHS did not address the issue one way or the other. The Court sees no reason to ignore the Secretary's public comments because it is not entirely clear that the rules of evidence apply at this stage of the case and even though the court elsewhere expressed a "healthy degree of skepticism about the Secretary's comments," the Court also noted that "he is the ultimate boss of DHS" and his public comments give the Court "reason to question the veracity of statements in the [declaration] submitted by a lower-level DHS bureaucrat." *Florida v. United States*, Case No. 3:21cv1066, ECF No. 165, at 5 n.6 (May 13, 2023).

[11] DHS has not argued that the challenge to the Parole+ATD policy was moot or that there was not "case or controversy" with respect to the policy when the Court entered the Opinion and Order in *Florida*, and it would be hard-pressed to make that argument at this point. *See Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (holding that a case may only become moot by a defendant's voluntary cessation of the challenged practice when the defendant meets the "'heavy burden of persuading' the court" that "the allegedly wrongful behavior could not reasonably be expected to recur") (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)); *Troiano v. Supervisor of Elections in Palm Beach Cnty., Fla.*, 382 F.3d 1276, 1285 (11th Cir. 2004) ("[A] challenge to a government policy that has been unambiguously terminated will be moot in the absence of some reasonable basis to believe that the policy will be reinstated if the suit is terminated."); *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1267-70 (11th Cir. 2020) (similar); *Harrell v. The Fla. Bar*, 608 F.3d 1241, 1265-67 (11th Cir. 2010) (holding that a case against a governmental actor was not moot because "the record neither yields absolute certainty that the challenged conduct has permanently ceased, nor … supports the conclusion that the … policy was 'unambiguously terminated'"). Judicial review of agency action should not be a game of "whack-a-mole" whereby the agency is able to avoid review of its actions by discontinuing its reliance on a policy only to replace it with another policy that has a different name but operates functionally the same.

10

Third, "self-inflicted injury" does not establish irreparable harm. *See Texas v. Biden*, 10 F.4th 538, 558 (5th Cir. 2021) (citing 11A Charles Alan Wright, et al., Federal Practice and Procedure §2948.1 (2021), for the proposition that "a party may not satisfy the irreparable harm requirement if the harm complained of is self-inflicted"). The Court will not belabor this point here because, as thoroughly explained in the *Florida* decision, the TRO, and other orders entered over the past few days, the more persuasive evidence showed that Defendants brought the immigration "crisis" at the border on themselves (and the country) by adopting immigration policies that incentivized "irregular migration" by prioritizing "alternatives to detention" over actual detention and that they have known since early March that they would not be able to rely on "parole" as a "processing pathway" to avoid their statutory detention requirements and facilitate release without initiating immigration proceedings.[12]

<u>Injury to the Non-movant if a Stay is Granted</u>

With respect to the third factor (injury to the non-movant), issuance of a stay will injure Florida in the same way that it would have been injured if a TRO was not entered. Specifically, as explained in the TRO:

---

[12] The Court did not overlook DHS's argument that it surged resources to the border and have taken other steps (including adopting new asylum rules) to prepare for the expiration of the Title 42 Order and discourage aliens from simply showing up at the Southwest Border. That is all well and good, but it begs the question as to why these steps were not taken long before now to slow or stop the flow of aliens into the country over the past two years.

11

the evidence presented in *Florida* established that Florida suffers substantial harm—both to its sovereignty[FN7] and its public fisc—when the federal government releases aliens into the country on "parole" (or otherwise) rather than detaining them as required by the INA. *See Florida* [*v. United States*], 2023 WL 2399883, at *17-18 [(N.D. Fla. Mar. 8, 2023)]. That same harm will flow from the new policy because, as was the case with the Parole+ATD policy vacated in *Florida*, the new policy is intended to "shift the processing of arriving aliens to ICE facilities around the country that are closer to the aliens' final destinations." *Id.* at *14. The harm to Florida is irreparable because it "cannot be undone through monetary remedies," *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990), because the United States has sovereign immunity from damages claims, *see Odebrecht Const., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1289 (11th Cir. 2013); *see also State of Florida v. Becerra*, 544 F. Supp. 3d 1241, 1300 (M.D. Fla. 2021) (observing that in an APA action, sovereign immunity bars the recovery of monetary damages from the federal government, thereby making the state's financial injury irreparable), and there is no way to remedy the impact on state sovereignty that flows from … Florida's inability to exclude aliens who were improperly "paroled" into the country from its territory.

> [FN7] The Eleventh Circuit has recognized that even though injuries to state sovereignty are "intangible," they are real and concrete. *See W. Virginia by & through Morrisey v. U.S. Dep't of the Treasury*, 59 F.4th 1124, 1136 (11th Cir. 2023). And, as Justice Scalia explained in *Arizona v. United States*, controlling immigration "is an inherent attribute of sovereignty" and it is questionable whether the States would have ratified the Constitution if it had provided that limits on immigration "will be enforced only to the extent the President deems appropriate" because the States "jealously guarded" their sovereignty during the Constitutional Convention. 567 U.S. 387, 422, 436 (2012) (Scalia, J., concurring in part and dissenting in part).

Doc. 10 at 12-13.

Public Interest

With respect to the fourth factor (public interest), "[t]he public interest in enforcement of the immigration laws is significant," *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1221 (D.C. Cir. 1981), and "our system does not permit agencies to act unlawfully even in pursuit of desirable ends," *Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2490 (2021).  Moreover, "[t]here is generally no public interest in the perpetuation of unlawful agency action," *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016), and "frustration of federal statutes and prerogatives are not in the public interest…." *United States v. Alabama*, 691 F.3d 1269, 1301 (11th Cir. 2012); *see also Becerra*, 544 F. Supp. 3d at 1304 (concluding that the state's high likelihood of success on the merits showed that injunctive relief preventing the likely unlawful agency action was in the public interest).

Here, as discussed above, the evidence in the *Florida* case established that DHS was misusing its statutory parole authority by creating a new "processing pathway," Parole+ATD, pursuant to which aliens arriving at the Southwest Border would be released into the country with minimal vetting and without being placed into removal proceedings simply to expedite processing at CBP facilities.  The Parole with Conditions policy is materially indistinguishable in its purpose and effect, and just like the Parole+ATD policy, the Parole with Conditions policy

13

contravenes the narrow authority provided in the parole statute and undermines the general proposition that, under the plain language of 8 U.S.C. §1225(b), arriving aliens are supposed to be detained, not released (on parole or otherwise), during the pendency of their immigration cases. Thus, staying the TRO and allowing the Parole with Conditions policy to be implemented would contravene the public interest.

The Court did not overlook DHS's argument that a stay is in the public interest because the Supreme Court has frequently stayed district court injunctions in immigration cases and has "necessarily determined [in those cases] that the Government's border-management interests outweighed the plaintiffs' interests." Doc. 13 at 5. However, the Court does not read those decisions as standing for the proposition that a TRO must be stayed (or that a preliminary injunction cannot be entered) whenever the federal government claims that such action would interfere with its "border-management interests" even if (as the Court found in *Florida*, and appears to be the case here) the manner in which the federal government is "managing" the border contravenes the authority provided by Congress.

Nor did the Court overlook DHS's argument that a stay is in the public interest because it is entitled to "the utmost deference" when its border-enforcement policies are challenged. *Id.* at 6-7. The Court does not disagree with that general

proposition,[13] but as explained in the *Florida* decision, DHS's deference is not unbounded. *See* 2023 WL 2399883, at *1 (explaining that the immigration officials' "'broad discretion' in carrying out the immigration laws … must be exercised within the confines established by Congress").

Finally, the Court did not overlook DHS's argument that a stay is in the public interest because, without a stay, the TRO will lead to overcrowding in CBP and ICE facilities—which will endanger the health and safety of aliens and border patrol staff and require DHS to resort to other forms of release or simply not apprehend aliens. *See* Doc. 13 at 7-10. The Court finds this argument unpersuasive because, as discussed above, it appears that the number of post-Title 42 Order "encounters" of aliens arriving at the Southwest Border is considerably less than what was projected in the declaration on which this argument is based. Moreover, putting aside the political ramifications of DHS officially stating that it might not apprehend or process aliens who entered the country illegally, the Court finds it highly implausible that DHS will do so or re-implement policies (such as the short-lived Notice to

---

[13] DHS cites *Jeanty v. Bulger*, 204 F. Supp. 2d 1366, 1380-81 (S.D. Fla. 2002), aff'd, 321 F.3d 1336 (11th Cir. 2003), for the proposition that the "standard for reviewing Executive's policies under §1182(d)(5) is extremely deferential and [that the] court must avoid overriding the agency's policy determination, regardless of whether the court agrees with the policymaker's choice or approves of the policy reasons underlying it" (alterations adopted and internal quotations omitted). To the extent DHS is suggesting that the Court vacated the Parole+ATD policy and/or enjoined the Parole with Conditions policy simply because the Court disagreed with the policy choices underlying that decision, the Court makes clear that those decisions were based on the Court's view of what the law required—nothing more, nothing less.

Report policy) that it effectively abandoned during the course of the *Florida* case and that its witnesses, including U.S. Border Patrol Chief Ortiz, had a hard time trying to defend from an operational perspective in light of the significant processing time and cost that was required to track down aliens who failed to report.

## Conclusion

In sum, for the reasons stated above, DHS's motion to stay the TRO (Doc. 13) is **DENIED**. The Court will rule on DHS's request to convert the TRO into a preliminary injunction in the next day or so.

**DONE and ORDERED** this 15th day of May, 2023.

_____
**T. KENT WETHERELL, II**
**UNITED STATES DISTRICT JUDGE**