UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**STATE OF FLORIDA**,

   **Plaintiff**,

v.                                            Case No. 3:23cv9962-TKW-ZCB

**ALEJANDRO MAYORKAS**, et al.,

   **Defendants**.

_____/

## ORDER

Yesterday, the Court directed Defendants to address the allegations in a news report that DHS had "paroled" 2,500 aliens <u>after</u> the Court entered the temporary restraining order (TRO) in this case and to show cause why they should not be held in contempt if those allegations were true. Defendants filed a response detailing the immediate steps that DHS took to comply with the TRO; explaining that 6,413 aliens were "fully processed" for release under the Parole with Conditions policy on May 10 and May 11 but that 2,576 of those aliens were not physically released until after the TRO took effect at 11:59 p.m. eastern time on May 11;[1] and noting that there are an additional 167 aliens who may have been released under the Parole with

---

[1] The 6,413 aliens processed for release under the Parole with Conditions policy on May 10 and May 11 amounts to just under 33% of the total number of aliens encountered by the U.S. Border Patrol on those days. *See* Doc. 28 at 4 (reporting 9,998 encounters on May 10 and 9,649 encounters on May 11).

Conditions policy after May 11 even though their processing may not have been fully complete when the TRO took effect.

The TRO enjoined DHS from "implementing or enforcing" the Parole with Conditions policy after 11:59 p.m. eastern time on May 11. *See* Doc. 10 at 16 (¶1). DHS took immediate steps to stop processing aliens under the policy after receiving notice of the TRO, but it interpreted the TRO to mean that it could still release aliens after TRO took effect so long as the alien's processing under the Parole with Conditions policy was "fully complete" as of 11:45 p.m. *See* Docs. 26-1, 27. It was the Court's expectation and intention that no aliens would be released under the authority of the Parole with Conditions policy after the TRO went into effect because, in the Court's mind, the policy is still being "implemented" when the alien is released from custody, irrespective of when the alien's processing was "fully completed." Indeed, the entire point of the policy is to release aliens from custody more quickly, and it is hard to understand how an alien can be both "paroled" and in custody at the same time.

Ideally, DHS would have sought clarification from the Court before making a unilateral decision to release aliens under the authority of the Parole with Conditions policy after the TRO took effect.[2] However, because the TRO did not clearly and

---

[2] The Court understands that the TRO was issued at 9:45 p.m. eastern time and that DHS did not have time to get clarification from the Court before the TRO went into effect that night, but there is no reason that DHS could not have requested clarification the following morning

unambiguously address what DHS was to do with aliens who had been "fully processed" but not yet released when the TRO took effect, and because the Court is required to construe any uncertainties in the order in the light most favorable DHS, the Court cannot say that DHS willfully disregarded the authority of the Court by releasing the 2,576 aliens when it did. *See Georgia Power Co. v. NLRB*, 484 F.3d 1288, 1291 (11th Cir. 2007) (explaining that the court must "construe any ambiguities or uncertainties in … a court order in a light favorable to the person charged with contempt" and that a finding of civil contempt requires clear and convincing evidence that "(1) the allegedly violated order was valid and lawful; (2) the order was *clear and unambiguous*; and (3) the alleged violator had the ability to comply with the order") (emphasis in original).  Moreover, given the diligent efforts that DHS made to promptly stop processing additional aliens under the Parole with Conditions policy, a finding of contempt would be unwarranted here. *See Howard Johnson Co. v. Khimani*, 892 F.2d 1512, 1516 (11th Cir. 1990) ("Conduct that evinces substantial, but not complete, compliance with the court order may be excused if it was made as part of a good faith effort at compliance.").

DHS will, however, be required report to the Court how many of the 2,576 aliens who, in the Court's mind, should not have been released on "parole" after the

---

because DHS had apparently completed releases for the day and had no plans to release any of the "fully processed" aliens until the following morning. *See* Doc. 26-1 at 5 (¶15.a).

3

TRO went into effect reported to ICE as required by the Parole with Conditions policy. The report shall identify the number of aliens who have reported to ICE and been issued NTAs; indicate when, where (city and state), and how (in person or online) these aliens reported to ICE and were issued NTAs; and explain what steps DHS is taking to track down the aliens who did not report as required and whether those efforts have been successful. Additionally, as it requested, DHS will be given additional time to determine whether (and why) any of the 167 other aliens that may have been released under the Parole with Conditions policy even though their processing was not fully complete when the TRO took effect were, in fact, released in violation of the TRO.

Accordingly, it is **ORDERED** that:

1. The Order to Show Cause is discharged as to the 2,576 aliens released under the Parole with Conditions policy after the TRO went into effect, but DHS shall file periodic reports on the status of those aliens containing the information described above. The first report is due 60 days from the date of this Order, which roughly corresponds to the period within which those aliens are required report to ICE to be issued NTAs under the Parole with Conditions policy.

2. Consideration of the Order to Show Cause is deferred as to the 167 aliens who may have released under the Parole with Conditions policy even though their processing may not have been fully complete when the TRO took effect, and

4

DHS shall file supplemental information about the circumstances of those aliens' releases on or before Friday, May 19, 2023.

    **DONE and ORDERED** this 16th day of May, 2023.

                                                        _____
                                                    **T. KENT WETHERELL, II**
                                                    **UNITED STATES DISTRICT JUDGE**