# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

| | |
|---|---|
| David J. Smith<br>Clerk of Court | For rules and forms visit<br>www.ca11.uscourts.gov |

May 18, 2023

Brian M. Boynton
DOJ-CIV
Appellate Section, Office of Immigration Litigation
PO BOX 878 BEN FRANKLIN STATION
WASHINGTON, DC 20044

Jason R. Coody
DOJ-USAO
Civil Division
111 N ADAMS ST FL 4
TALLAHASSEE, FL 32301

Joseph Anton Darrow
DOJ-CIV
Office of Immigration Litigation, District Court Section
PO BOX 868
BEN FRANKLIN STATION
WASHINGTON, DC 20044

Marie Moyle
DOJ-USAO
Civil Division
111 N ADAMS ST FL 4
TALLAHASSEE, FL 32301

William C. Peachey
U.S. Department of Justice
Office of Immigration Litigation
450 5TH ST, NW RM 2043
WASHINGTON, DC 20001

Erez R. Reuveni
DOJ-Civ
450 5TH ST NW
WASHINGTON, DC 20001

U.S. Attorney Service - Northern District of Florida
U.S. Attorney's Office
Northern District of Florida
21 E GARDEN ST STE 400
PENSACOLA, FL 32502-5675

Appeal Number: 23-11644-G
Case Style: State Of Florida v. Secretary, U.S. Department of Homeland Security, et al
District Court Docket No: 3:23-cv-09962-TKW-ZCB

## CIVIL DOCKETING NOTICE

The above-referenced case has been docketed in this Court. All documents filed in this appeal must include the Case Style and Appeal Number shown above.

Appellant Requirements
Unless the following requirements have already been satisfied, **within 14 days of the date of this notice the appellant MUST:**

1. Pay to the **District Court** the Filing Fee **OR** File a Motion to Proceed In Forma Pauperis (IFP) in the district court. See FRAP 3(e), FRAP 24.

   *If the filing fee is not paid and a motion to proceed IFP has not been filed in the district court within 14 days of the date of this notice, this appeal will be dismissed without further notice pursuant to 11th Cir. R. 42-1(b).*

   *If the district court has denied the appellant IFP status on appeal, the appellant has 30 days from the date of the district court's order to file an IFP motion in this Court. See FRAP 24(a)(5).*

2. File in this Court **AND** in the district court a Transcript Order Form **OR** file a certificate in this Court stating no transcripts will be ordered. See FRAP 10(b)(1), 11th Cir. R. 10-1. (Not applicable in certain bankruptcy appeals. See FRAP 6(b)).

   *If no transcripts are ordered, appellant's brief is due 40 days after **05/18/2023**, except as otherwise provided by the rules. See 11th Cir. Rules 12-1 and 31-1.*

3. File a Certificate of Interested Persons and Corporate Disclosure Statement (CIP). See 11th Cir. R. 26-1(a)(1).

4. Complete the Web-Based CIP (attorneys only). See 11th Cir. R. 26.1-1(b).

5. File a Civil Appeal Statement (attorneys only). See 11th Cir. R. 33-1(a)(3).

Mediation
If a Civil Appeal Statement is required to be filed and the appeal is fully counseled on all sides,

your appeal will be reviewed and considered for mediation. Mediation services are at no cost to the parties. If no Civil Appeal Statement is required or you or any party to the appeal is self-represented or *pro se* then the appeal is not eligible for mediation. See 11th Cir. R. 33-1.

Appellee Requirements
Unless the following requirements have already been satisfied, **within 28 days of the date of this notice, all appellees participating in this appeal MUST:**

1. File a CIP or a notice. See 11th Cir. R. 26.1-1(a)(3).

2. Complete the Web-Based CIP (attorneys only). See 11th Cir. R. 26.1-1(b).

Attorney Participation
All attorneys (except court-appointed attorneys) who wish to participate in this appeal must file an Appearance of Counsel Form within 14 days of the date of this notice. See 11th Cir. R. 46-6(b). Please also see FRAP 46 and the corresponding circuit rules.

All counsel must file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Although not required, non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing are available on the Court's website.

Obligation to Notify Court of Change of Addresses
Each pro se party and attorney has a continuing obligation to notify this Court of any changes to the party's or attorney's addresses during the pendency of the case. See 11th Cir. R. 25-7.

Additional Information
Rules, forms, and additional information, including a handbook for pro se litigants, can be found at www.ca11.uscourts.gov.

Clerk's Office Phone Numbers
General Information:    404-335-6100    Attorney Admissions:    404-335-6122
Case Administration:    404-335-6135    Capital Cases:          404-335-6200
CM/ECF Help Desk:       404-335-6125    Cases Set for Oral Argument: 404-335-6141

CIVIL - Notice of Docketing

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

STATE OF FLORIDA,

    Plaintiff,

v.                                                                                    Case No. 3:23-cv-9962

ALEJANDRO MAYORKAS;
et. al,

    Defendants.

_____

## NOTICE OF APPEAL

Pursuant to 8 U.S.C. § 1292(a)(1) and Federal Rule of Appellate Procedure 3, notice is hereby given that all Defendants appeal to the United States Court of Appeals for the Eleventh Circuit from the Court's Order of May 16, 2023, ECF No. 30, entering a preliminary injunction, as well as any and all associated opinions and orders.

Date: May 17, 2023

JASON R. COODY
*United States Attorney*

MARIE A. MOYLE
*Assistant United States Attorney*
Northern District of Florida

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court Section

EREZ REUVENI
*Assistant Director*

/s/ *Joseph A. Darrow*
JOSEPH A. DARROW
*Trial Attorneys*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 598-7537
Joseph.a.darrow@usdoj.gov

*Counsel for Defendants*

1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 17, 2023, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which provided an electronic notice and electronic link of the same to all attorneys of record.

> By: */s/ Joseph A. Darrow*
> JOSEPH A. DARROW
> Trial Attorney
> United States Department of Justice
> Civil Division

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**STATE OF FLORIDA**,

    **Plaintiff**,

v.                                               Case No. 3:23cv9962-TKW-ZCB

**ALEJANDRO MAYORKAS**, **et al.**,

    **Defendants**.

_____/

## PRELIMINARY INJUNCTION

This case involves a challenge to an immigration policy known as "Parole with Conditions."[1] The case has proceeded at a breakneck pace since it was filed last Wednesday, with extensive briefing and multiple orders being issued on an expedited basis. Currently, the issue before the Court is whether the temporary restraining order (TRO) issued last Thursday should be converted into a preliminary injunction that will remain in effect during the pendency of this case. This, in turn, will allow Defendants (collectively, "DHS") to seek review of the Court's decision enjoining the challenged policy from a higher court—first, the Eleventh Circuit, and then, if necessary, the Supreme Court.

---

[1] The policy is contained in a May 10, 2023, memorandum issued by U.S. Border Patrol (USBP) Chief Raul Ortiz, titled "Policy on Parole with Conditions in Limited Circumstances Prior to Issuance of a Charging Document (Parole with Conditions)." *See* Doc. 5-1.

## Background

For sake of brevity, the Court will not repeat here what it has said on multiple prior occasions about the ongoing immigration "crisis" at the Southwest Border and the circumstances that contributed to it. Suffice it to say, the Parole with Conditions policy is the latest in a series of policies adopted by DHS over the past two years to expedite the release of aliens arriving at the Southwest Border into the country instead of detaining them until their immigration proceedings are concluded as required by 8 U.S.C. §1225(b).

The Court vacated one of the prior policies—the "Parole+ATD" policy—in an earlier case filed by Florida against DHS. *See Florida v. United States*, Case No. 3:21cv1066, 2023 WL 2399883 (N.D. Fla. Mar. 8, 2023). DHS did not appeal the decision in that case until May 5, 2023—the next to last business day of the appeal period and five days before it adopted the Parole with Conditions policy.[2]

On Wednesday, May 10, Florida filed a complaint in this Court challenging the legality of the Parole with Conditions policy. The case was randomly assigned to me.

The next morning, Florida filed an emergency motion for a TRO. DHS was ordered to file a response that afternoon, which it did. That night, after considering

---

[2] Florida filed a cross-appeal today, presumably so it can argue on appeal that the Court also should have vacated DHS's overriding "non-detention policy" that the Court found to be contrary to the immigration statutes but not subject to judicial review.

2

the parties' filings, the Court entered a TRO enjoining DHS from "implementing or enforcing" the Parole with Conditions policy. *See* Doc. 10.

Over the weekend, DHS filed a motion to stay the TRO. Florida was ordered to file a response by mid-day yesterday, which it did. Last night, the Court entered an order denying the stay. *See* Doc. 29.

The Court scheduled a hearing for this Friday, May 19, to consider whether to convert the TRO into a preliminary injunction, but the Court cancelled the hearing yesterday after the parties entered into a stipulation (Doc. 16) waiving their rights to a hearing and agreeing on the evidence that the Court could consider in deciding whether to convert the TRO into a preliminary injunction.

The Court has carefully considered the parties' filings in support of and in opposition to preliminary injunctive relief, including the parties' stipulation, the declarations and other evidence submitted by DHS (*see* Docs. 9-2, 13-1, 13-2, 26-1, 27), the USBP statistical data (*see* Doc. 28), the parties' proposed orders (*see* Docs. 22, 24), and the relevant portions of the trial record in the *Florida* case.[3] The Court

---

[3] The parties agreed that the Court may consider evidence from the trial record in the *Florida* case "only to the extent relevant here." Doc. 16 at 2. The parties agree that the evidence in the *Florida* case is relevant to the issue of standing, but DHS disputes whether that the evidence establishes standing here, and it also appears to dispute that evidence about the Parole+ATD policy at issue in *Florida* is relevant to the balancing of the equities in this case. *Id.* at 2-3. The Court rejected DHS's position on the issue of standing in the order denying a stay of the TRO, *see* Doc. 29 at 6-7, and the Court finds that the circumstances of the *Florida* case (including the vacatur of the Parole+ATD policy) are relevant to various injunction factors, as discussed below and in the prior orders entered in this case.

sees no need for a lengthy order because the Court has entered multiple orders over the past few days analyzing the facts under the same legal standard that governs the issuance of a preliminary injunction. Thus, in the interest of brevity and an expeditious ruling, this order will simply incorporate by reference the analysis in those prior orders, except in a few instances where additional discussion is warranted based on the new data or arguments that were not specifically addressed in the prior orders.

## Analysis

The Court has the authority to issue a preliminary injunction under Fed. R. Civ. P. 65(a).

Both parties have asked the Court to enter a preliminary injunction. Florida requested a preliminary injunction in its complaint and the parties agreed that its filings to date can be treated as its motion for preliminary relief, *see* Doc. 16 at 1; and even though DHS does not agree that a TRO should have been entered, it asked the Court to convert the TRO into a preliminary injunction so it can seek appellate review of the Court's decision to enjoin the Parole with Conditions policy, *see* Doc. 13 at 15-17.

To obtain a preliminary injunction, Florida has the burden to prove that "(a) there is a substantial likelihood of success on the merits; (b) the … preliminary injunction is necessary to present irreparable injury; (c) the threatened injury

4

outweighs the harm that the … preliminary injunction would cause to the non-movant; and (d) the … preliminary injunction would not be averse to the public interest." *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034-35 (11th Cir. 2001). The Supreme Court has stated that "the first two factors … are the most critical," *Nken v. Holder*, 556 U.S. 418, 434 (2009), but the Eleventh Circuit has suggested that "[t]he first of the four prerequisites to temporary injunctive relief is generally the most important," *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1232 (11th Cir. 2005). Here, as discussed below, all four factors weigh in favor of granting a preliminary injunction.

With respect to the first factor (substantial likelihood of success), Florida alleged in the complaint that the Parole with Conditions policy violates the Administrative Procedure Act (APA) because it is contrary to law (Count 1), arbitrary and capricious (Count 2), and was not adopted through "notice and comment" procedures (Count 3). The Court has no trouble finding that Florida has a substantial likelihood of ultimately showing that it has standing to challenge the Parole with Conditions policy and that it is likely to succeed on its claim that the policy is contrary to law for the reasons more fully stated in the TRO (*see* Doc. 10 at 8-11), the order denying a stay of the TRO (*see* Doc. 29 at 4-8), and the *Florida* decision invalidating the materially indistinguishable Parole+ATD policy (*see* 2023 WL 2399883 at *16-20, *29-31). The Court also finds that Florida has a substantial

5

likelihood of success on its "notice and comment" claim for the reasons stated in the TRO (*see* Doc. 10 at 8 n.5).[4] The Court does not find persuasive any of DHS's arguments to the contrary on these points for the same reasons that the Court found in the order denying a stay of the TRO that DHS was not likely to succeed on its appeal. *See* Doc. 29 at 4-8.

With respect to the second factor (irreparable harm to the movant), the Court finds that a preliminary injunction is necessary to prevent irreparable harm to Florida for the reasons stated in the TRO (*see* Doc. 10 at 12-13) and reaffirmed in the order denying a stay of the TRO (*see* Doc. 29 at 11-12).

With respect to the third factor (harm to the non-movant), the Court finds that the harm to Florida is not outweighed by the harm that the preliminary injunction will allegedly cause DHS because, as explained in the order denying a stay of the TRO, the Court is simply not persuaded that enjoining the Parole with Conditions policy is as big of a deal as DHS is making it. *See* Doc. 10 at 8-11. The finding on this point in the order denying a stay of the TRO is bolstered by the USBP data filed

---

[4] The Court is not in a position to say at this point whether the Parole with Conditions policy is arbitrary and capricious because that determination will likely be made based on the administrative record, which has not yet been produced. That said, the Court will be interested to see how DHS justifies the policy in light of the evidence in the *Florida* case showing that similar prior policies that relied on aliens to self-report to Immigration and Customs Enforcement facilities to receive charging documents forced DHS to expenditure of considerable time and money down the road to track down the substantial number of aliens who (not surprisingly) did not self-report.

after that order was posted,[5] which shows that encounters at the border have dropped significantly after the expiration of the Title 42 Order. Indeed, as of two days ago, the number of aliens arriving the border was about one-third of the number predicted in the declaration that DHS relied on in support of its argument that the sky will fall if it cannot release aliens under the Parole with Conditions policy. *Compare* Doc. 13-1 at 6 (¶11) (predicting "an average of 12,000-14,000 noncitizen [encounters] per day" after the Title 42 Order expires on May 11) *with* Doc. 28 at 4 (showing that alien encounters dropped from 9,649 on May 11, to 6,251 on May 12, to 4,335 on May 13, to 4,193 on May 14). Likewise, contrary to the prediction in the declaration that USBP was projected to grow to "over 45,000 individuals in custody by the end of [May]," Doc 13-1 at 6 (¶12), the USBP data shows that the number of individuals in custody has declined every day since the Title 42 Order expired, and as of May 14, only 22,259 aliens were in custody, *see* Doc. 28 at 6.[6]

---

[5] Technically, the USBP data was filed before the order was posted, but the Court put the order in the internal electronic folder to be posed by the Clerk and left the courthouse before seeing that the USBP data had been filed. The USBP data would not have changed the Court's ruling on the motion to stay and, as discussed above, it bolsters the Court's decision not to give much weight to the declaration predicting dire consequences if USBP was prohibited from using the Parole with Conditions "processing pathway."

[6] The Court did not overlook that the data shows an increase in the average time-in-custody (TIC) after the expiration of the Title 42 Order and the entry of the TRO, but the most recent figure is just slightly above the 72-hour period that USBP facilities are designed to accommodate, according to the evidence in the *Florida* case. Also, the most recent TIC figure is well below the 20-day period in the *Flores* case that DHS repeatedly pointed to in the *Florida* case as compelling expedited release of children and family units. Moreover, it is unclear whether these TIC figures include the amount of time aliens spend in custody between the completion of their processing and their physical release. This may be significant because DHS claimed in its response to the Order

With respect to the fourth factor (public interest), the Court finds that a preliminary injunction is in the public interest for the reasons stated in the TRO (*see* Doc. 10 at 13-14) and the order denying a stay of the TRO (*see* Doc. 29 at 13-16), and because it would promote respect for the rule of law by not allowing DHS to achieve what amounts to an end-run around this Court's decision in *Florida* through the adoption of a functionally identical policy to the Parole+ATD policy invalidated in that case. *See* Doc. 10 at 11 (agreeing with DHS that the *Florida* decision did not preclude DHS from using its parole authority in other ways, but explaining that "what DHS cannot do is adopt a functionally identical policy as the one the Court vacated in *Florida* and then expect a different outcome when the policy is challenged").

The Court did not overlook DHS's argument that the Court does not have the authority to enjoin the Parole with Conditions policy under the immigration statutes and/or that the TRO was overbroad and must be narrowed, but the Court finds those arguments unpersuasive for the reasons stated in the order denying a stay of the TRO. *See* Doc. 29 at 7-8. The Court also did not overlook Florida's request that the Court

---

to Show Cause that it did not violate the TRO by releasing more than 2,500 aliens after the TRO went into effect because "implementation" of the Parole with Conditions policy is complete when the alien is "fully processed" even though the alien may not be physically released until the following morning. *See* Doc. 26-1 at 3 (¶¶9-10) (claiming that aliens "have been granted parole effective as of the time they are fully processed" even though they may remain in physical custody longer because USBP "generally does not release individuals overnight"). Thus, if the TIC figures include the time that aliens sometimes remain in custody after they are "paroled," those figures are likely overstated to some degree.

8

treat its filings as both a request for preliminary injunction and a request for a stay under the APA, 5 U.S.C. §705, but the Court tends to agree with DHS that an APA stay is unavailable because the Parole with Conditions policy was already in effect when Florida filed its complaint and that statute refers to "postpon[ing]" the effective date of the agency action.[7]

## Conclusion

In sum, for the reasons stated above, the Court finds that Florida is entitled to a preliminary injunction prohibiting DHS from "paroling" aliens into the country under the Parole with Conditions policy. No bond is required for the reasons stated in the TRO. *See* Doc. 10 at 15 n.8. A stay of the preliminary injunction is not warranted for the reasons stated in the order denying a stay of the TRO. *See* Doc. 29 at 3 n.3.

Accordingly, it is **ORDERED** that:

1. DHS is enjoined from implementing or enforcing the parole policy contained in the May 10, 2023, Memorandum from U.S. Border Patrol Chief Raul Ortiz, titled "Policy on Parole with Conditions in Limited Circumstances Prior to Issuance of a Charging Document (Parole with Conditions)," pending disposition of this case or further order of the Court.

---

[7] That said, the Court need not definitively decide that issue because an APA stay would not give Florida any more relief than it is getting through the preliminary injunction

9

2. The parties shall file a status report 14 days from the date of this Order explaining how they intend to proceed with this case in this Court pending resolution of DHS's expected appeal of the preliminary injunction, and unless the parties agree that this case should be stayed pending appeal, the status report shall include a proposed scheduling order.

**DONE and ORDERED** this 16th day of May, 2023.

_____
**T. KENT WETHERELL, II
UNITED STATES DISTRICT JUDGE**