UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

STATE OF FLORIDA,

   *Plaintiff*,

v.                                      Case No. 3:23-cv-9962-TKW-ZCB

ALEJANDRO MAYORKAS, Secretary of the United States Department of Homeland Security, in his official capacity; RAUL ORTIZ, Chief of Border Patrol, in his official capacity; the UNITED STATES OF AMERICA,

   *Defendants*.
_____/

## AMENDED COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, AND DECLARATORY RELIEF

### INTRODUCTION

1. Pursuant to Rule 15(a)(1)(A), Florida files this amended complaint "as a matter of course." *See also* ¶ 5 (explaining that this amendment is permissible notwithstanding DHS's interlocutory appeal).

2. This amended complaint in no way seeks to alter Florida's allegations or claims against the Parole with Conditions Policy, referred to in this complaint as the "new policy" or the "new parole policy."

3. In fact, Florida expressly incorporates all allegations and claims in its initial complaint and repeats them verbatim below. *See* Fed. R. Civ. P. 10(b)–(c).

4. The State, however, amends its complaint to add allegations and claims relating to DHS's new NTA/own recognizance policy (the NTA/OR Policy), which Florida only discovered because DHS referenced it in the memorandum creating the new parole policy. *See* Doc. 5-1 at 2 (describing recent steps by Border Patrol to "streamline[] the NTA/on own recognizance (OR) process"); *see also Florida v. United States*, No. 3:21-cv-1066, 2023 WL 2399883, at *26 (N.D. Fla. Mar. 8, 2023) (explaining that "§ 1226(a) does not apply to applicants for admission apprehended at the Southwest Border").

5. Because Florida only adds new allegations relating to new claims and does not modify its existing allegations or claims, this amendment does not violate the rule against dual jurisdiction and does not moot DHS's pending interlocutory appeal. *See Johnson v. 3M Company*, 55 F.4th 1304, 1309 (11th Cir. 2022); *accord New Orleans Ass'n of Cemetery Tour Guides & Cos. v. New Orleans Archdiocesan Cemeteries*, 56 F.4th 1026, 1033–34 (5th Cir. 2023) (explaining that incorporating the initial complaint eliminates any mootness concerns with an amendment).

\* \* \*

6. Much ink has been spilled regarding Florida's dispute with the Biden Administration over the mass release of aliens at the Southwest Border.

1

7. On March 8, 2023, after a year and a half of litigation, this Court vacated one of the Biden Administration's unlawful release policies under the Administrative Procedure Act (APA) and entered final judgment. *See* Op. & Order, Doc. 157, *Florida v. United States*, No. 3:21-cv-1066-TKW-ZCB (N.D. Fla. Mar. 8, 2023) (Wetherell, J.).[1]

8. The vacated policy was known as the Parole Plus Alternatives to Detention Policy (Parole + ATD).

9. Rather than seek an emergency stay, the Department of Homeland Security (DHS) sat on its hands for 58 days before even filing a notice of appeal.

10. Now, with the Title 42 order set to expire on May 11, DHS apparently regrets that decision. The agency, entirely unprepared for the surge of migrants that will come to the Southwest Border when Title 42 ends, did not plan for this plainly foreseeable result.

11. Today is May 10, the day before the Title 42 order expires, and the media reports that DHS plans to immediately restart the *en masse* parole of aliens at the Southwest Border.[2]

---

[1] All further citations to "Op. & Order" refer to Judge Wetherell's March 8 Opinion and Order unless otherwise noted.

[2] https://www.nbcnews.com/politics/biden-admin-plans-order-release-migrants-us-no-way-track-rcna83704.

12. That plan may violate the Court's vacatur. *See* Op. & Order at 108.[3] But it is unquestionably cynical, in bad faith, and contrary to both the Immigration and Nationality Act (INA) and the APA. It is also, unfortunately, consistent with the game of whack-a-mole DHS has been playing with Florida and this Court for almost two years.

13. Florida seeks a temporary restraining order, a preliminary injunction, an order postponing the effective date, and ultimately vacatur of the new policy.

**PARTIES**

14. Plaintiff State of Florida is a sovereign State and has the authority and responsibility to protect its public fisc and the health, safety, and welfare of its citizens.

15. Florida sues Defendant the United States of America under 5 U.S.C. §§ 702–03 and 28 U.S.C. § 1346.

16. Defendant Alejandro Mayorkas is the Secretary of DHS. DHS is the federal agency principally responsible for immigration enforcement. As most relevant here, DHS oversees U.S. Citizenship and Immigration Services (USCIS), U.S. Customs and Border Protection (CBP), and Immigration and Customs Enforcement (ICE). Florida sues Secretary Mayorkas in his official capacity.

---

[3] To ensure consistency between any motion to enforce the existing judgment and the relief sought in this case, Florida plans to move to transfer this case to Judge Wetherell.

17. Defendant Raul Ortiz is the Chief of Border Patrol, which is a component of CBP. Florida sues him in his official capacity.

## JURISDICTION AND VENUE

18. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1346, and 1361, and 5 U.S.C. §§ 702–03.

19. The Court is authorized to award the requested declaratory and injunctive relief under 5 U.S.C. §§ 705–06, 28 U.S.C. §§ 1361 and 2201–02, the Constitution, and the Court's equitable powers.

20. Venue lies in this district pursuant to 28 U.S.C. § 1391(e)(1) because the State of Florida is a resident of every judicial district in its sovereign territory, including this judicial district (and division). *Florida v. United States*, No. 3:21-cv-1066, 2022 WL 2431443, at *2 (N.D. Fla. Jan. 18, 2022). Further, because this lawsuit principally concerns conduct related to Florida's previous challenge, which was litigated in this division, a substantial part of the events or omissions giving rise to Florida's claims occurred here.

## FACTUAL BACKGROUND

21. On September 28, 2021, Florida filed its Complaint in *Florida v. United States*. Doc. 1, No. 3:21-cv-1066-TKW-ZCB (N.D. Fla.).

22. Florida initially challenged DHS's "prosecutorial discretion" policy, which involved the mass release of aliens at the Southwest Border without any

4

processing or accountability. Shortly after Florida sued, DHS replaced that policy with the first Parole + ATD Policy (the November Parole + ATD Policy). Doc. 6-2, No. 3:21-cv-1066-TKW-ZCB (N.D. Fla. Dec. 3, 2021).

23. Eight months later, DHS rescinded the November Parole + ATD Policy and replaced it with the July Parole + ATD Policy. *See* Doc. 70, No. 3:21-cv-1066-TKW-ZCB (N.D. Fla. July 20, 2021).

24. It is plain from the record that DHS's practice of constantly changing its policies was based on DHS's conclusion that its policies were indefensible.

25. As Judge Wetherell remarked during closing arguments, "it seemed to me that the real reason" for the policy change was that "doing prosecutorial discretion releases . . . was more challenging to defend than something based on a specific parole statute."

26. Similarly, Judge Wetherell remarked at the pretrial conference that he "would hope it would be fairly obvious to everyone" that the prosecutorial discretion practice was "invalid."

27. Judge Wetherell made similar comments with respect to the first iteration of Parole + ATD. Specifically, he said that he was "pretty clear" as the case progressed that if DHS "had not come up with a new memo and a new administrative record . . . it was dead on arrival." He further stated that it was "pretty

5

obvious . . . that [DHS] created this new July memo to backfill the problem they had with a policy that was completely indefensible."

28. On March 8, 2023, the Court vacated the July Parole + ATD Policy and remanded to DHS for further proceedings. Op. & Order at 108. The Court did not vacate the prosecutorial discretion policy or the November Parole + ATD Policy because DHS insisted that it had abandoned those policies and any such challenges were therefore moot.

29. DHS did not seek an emergency stay of the Court's order. Instead, DHS waited until the second to last business day before the deadline to file its notice of appeal. Doc. 159, No. 3:21-cv-1066-TKW-ZCB (N.D. Fla. May 5, 2023).

30. Based on DHS's repeated representations to Florida and to the Court, both by its attorneys and by its employees and agents under oath, the Court's vacatur left DHS with Order of Recognizance releases under 8 U.S.C. § 1226(a) as the only available processing mechanism for Border Patrol to release aliens *en masse* at the Southwest Border. Notably, releases under § 1226(a) require DHS to first initiate removal proceedings against the alien as a precondition for release.

31. On May 9, 2023—approximately two months after the Court vacated the July Parole + ATD Policy—the media began reporting that Border Patrol planned to restart the mass release of migrants at the Southwest Border upon the expiration of the Title 42 order on May 11, 2023.

32.　On May 10, a DHS spokesperson told the media that DHS plans to employ the "targeted use of parole [to] allow Border Patrol to focus its resources most effectively [on] quickly process[ing] and remov[ing] individuals who do not have a legal basis to remain in the country."[4]

33.　In short, rather than seek a stay of the Court's judgment in good faith, the Biden Administration plans to continue its game of whack-a-mole with Florida and with this Court by promulgating yet another unlawful policy. And DHS apparently hopes that with final judgment entered in *Florida v. United States* and an appeal pending, Florida will have to start from scratch.

34.　As the Court already recognized, Florida is injured by DHS's mass release of aliens at the Southwest Border, including by paying education expenses, unemployment benefits, the costs of incarceration, emergency Medicaid, and other similar benefits. Op. & Order at 44, 53–58. And those injuries are irreparable because DHS has sovereign immunity.

35.　Florida therefore seeks the following relief (Counts 1–3).

---

[4] https://www.nbcnews.com/politics/biden-admin-plans-order-release-migrants-us-no-way-track-rcna83704.

## SUPPLEMENTAL BACKGROUND ON NTA/OR POLICY

36. In *Florida v. United States*, the Court concluded that Border Patrol's practice of using 8 U.S.C. § 1226(a) to release aliens governed by 8 U.S.C. § 1225 was unlawful. *See Florida v. United States*, 2023 WL 2399883, at *26.

37. The Court, however, declined to issue any relief with respect to Border Patrol's § 1226(a) releases because the Court concluded that the policy Florida challenged in that case was "not a judicially reviewable agency action." *Id.* at *22.

38. Rather, the Court explained, that policy "was implemented through a series of discrete policies," and Florida must challenge those discrete policies to present a valid claim under the APA. *Id.*

39. In the memorandum formalizing the new parole policy, DHS admits that Border Patrol has taken recent steps to "streamline[] the NTA/on own recognizance (OR) process." Doc. 5-1 at 2.[5]

40. A Border Patrol declarant further confirms the existence of the new NTA/OR Policy, which apparently seeks to "utilize this processing pathway to the greatest extent possible." *See* Doc. 9-2 ¶ 6(f).

---

[5] Florida has not yet received a copy of the new NTA/OR Policy, though it has sent a request to DHS. Because the new parole policy references the NTA/OR Policy, Florida expects the NTA/OR Policy to be in the administrative record for the new parole policy. In the meantime, Florida has sufficient knowledge of DHS's practices to make these allegations in good faith on information and belief.

41. The NTA/OR process referenced by Border Patrol is the currently operative policy (NTA/OR Policy) governing the use of § 1226(a) to release applicants for admission after the aliens are caught crossing the border illegally.

42. Florida therefore now seeks review of that discrete agency action—the issuance of a new written § 1226(a) policy—based on the same harms the Court recognized in *Florida v. United States*, which are discussed above, *see* ¶ 34.

43. As this Court recognized in *Florida v. United States*, DHS has encouraged mass migration through its unlawful policies and is releasing hundreds of thousands of aliens into the State of Florida. Currently, most of those releases are pursuant to the new NTA/OR Policy.[6]

44. Florida therefore seeks the following relief (Counts 4–6).

## CLAIMS

### COUNT 1

**Agency action that is not in accordance with law
and is in excess of authority in violation of the APA**

45. Florida repeats and incorporates by reference ¶¶ 6–35.

46. Under the APA, a court must "hold unlawful and set aside agency action" that is "not in accordance with law" or "in excess of statutory . . . authority, or limitations, or short of statutory right." *See* 5 U.S.C. § 706(2)(A), (C).

---

[6] https://www.cbp.gov/newsroom/stats/custody-and-transfer-statistics (U.S. Border Patrol - Dispositions and Transfers tab) (listing 60,747 releases in April 2023 under the NTA/OR Policy).

47. DHS's new policy violates 8 U.S.C. §§ 1225(b), 1226(a), and 1182(d)(5).

## COUNT 2

**Arbitrary and capricious agency action in violation of the APA**

48. Florida repeats and incorporates by reference ¶¶ 6–35.

49. Under the APA, a court must "hold unlawful and set aside agency action" that is "arbitrary [or] capricious." 5 U.S.C. § 706(2)(A).

50. While DHS has not yet provided a copy of the new policy to Florida, it is impossible to imagine that DHS has engaged in reasoned decisionmaking. DHS should have sought an emergency stay of the Court's vacatur if it disagreed with the Court's ruling. DHS is instead thumbing its nose at a coequal branch of government.

## COUNT 3

**Failure to conduct notice and comment in violation of the APA**

51. Florida repeats and incorporates by reference ¶¶ 6–35.

52. The APA requires notice of, and comment on, agency rules that "affect individual rights and obligations." *Chrysler Corp. v. Brown*, 441 U.S. 281, 303 (1979); *see* 5 U.S.C. § 553.

53. As the Court already explained, Op. & Order at 99–102, new release policies like the one at issue here are subject to notice and comment. Nor could DHS possibly have good cause given its own delay and poor planning.

10

## COUNT 4

**Agency action that is not in accordance with law
and is in excess of authority in violation of the APA**

54. Florida repeats and incorporates by reference ¶¶ 1, 2, 4, 14–20, 34, 36–44.

55. Under the APA, a court must "hold unlawful and set aside agency action" that is "not in accordance with law" or "in excess of statutory . . . authority, or limitations, or short of statutory right." *See* 5 U.S.C. § 706(2)(A), (C).

56. The NTA/OR Policy is not in accordance with law because 8 U.S.C. § 1226(a) is not a lawful release mechanism for applicants for admission caught crossing the border illegally and because DHS may not apply § 1226(a) to an alien initially processed under § 1225. *See Florida v. United States*, 2023 WL 2399883, at *26–27.

## COUNT 5

**Arbitrary and capricious agency action in violation of the APA**

57. Florida repeats and incorporates by reference ¶¶ 1, 2, 4, 14–20, 34, 36–44.

58. Under the APA, a court must "hold unlawful and set aside agency action" that is "arbitrary [or] capricious." 5 U.S.C. § 706(2)(A).

59. On information and belief, DHS failed to consider an important aspect of the problem—specifically, the effect its policies have in encouraging mass migration.

60. DHS also failed to consider alternatives, including reopening family detention centers and moving to dissolve the *Flores* consent decree in light of the Supreme Court's recent decisions interpreting § 1252(f). *See Florida v. United States*, 2023 WL 2399883, at *19 ("[I]f DHS insists that *Flores* is causing the agency to violate [§ 1225(b)]—one would expect DHS to bring that to the attention of the *Flores* court.").

## COUNT 6

**Failure to conduct notice and comment in violation of the APA**

61. Florida repeats and incorporates by reference ¶¶ 1, 2, 4, 14–20, 34, 36–44.

62. The APA requires notice of, and comment on, agency rules that "affect individual rights and obligations." *Chrysler Corp. v. Brown*, 441 U.S. 281, 303 (1979); *see* 5 U.S.C. § 553.

63. The NTA/OR Policy was issued without the notice and comment procedures contemplated by 5 U.S.C. § 553.

64. The NTA/OR Policy "establishes a generally applicable policy to determine whether aliens are detained" or released, and "instructs agents how to

exercise their" authority. *Florida v. United States*, 2023 WL 2399883, at *33. Thus, the NTA/OR Policy is subject to notice and comment.

65. All the more so here, given that DHS's previous policy was to invoke § 1226(a) at the border only under "very exigent circumstances." In other words, the NTA/OR Policy is nothing short of a sea change.

## PRAYER FOR RELIEF

For these reasons, Florida asks the Court to:

a) Expedite this action.

b) Enter a temporary restraining order preventing DHS from enforcing or implementing the new policy.

c) Delay the effective date of the new policy under 5 U.S.C. § 705.

d) Preliminarily and permanently enjoin Defendants from enforcing or implementing the new policy.

e) Hold the new policy unlawful and set it aside under 5 U.S.C. § 706.

f) Issue declaratory relief declaring the new policy unlawful.

g) Hold unlawful and set aside the NTA/OR Policy under 5 U.S.C. § 706.

h) Issue declaratory relief declaring the NTA/OR Policy unlawful.

i) Award Florida costs and reasonable attorney's fees.

j) Award such other relief as the Court deems equitable and just.

Respectfully submitted,

ASHLEY MOODY
ATTORNEY GENERAL

John Guard (FBN 374600)
CHIEF DEPUTY ATTORNEY GENERAL
*/s/ James H. Percival*
James H. Percival (FBN 1016188)
CHIEF OF STAFF
Natalie P. Christmas (FBN 1019180)
COUNSELOR TO THE ATTORNEY GENERAL
Joseph E. Hart (FBN 124720)
COUNSELOR TO THE ATTORNEY GENERAL
Anita Patel (FBN 70214)
ASSISTANT BUREAU CHIEF

Henry C. Whitaker (FBN 1031175)
SOLICITOR GENERAL
Daniel W. Bell (FBN 1008587)
CHIEF DEPUTY SOLICITOR GENERAL
Darrick Monson (FBN 1041273)
ASSISTANT SOLICITOR GENERAL

Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
james.percival@myfloridalegal.com

*Counsel for the State of Florida*

14

**CERTIFICATE OF SERVICE**

I certify that on May 31, 2023, a true and correct copy of the foregoing was filed with the Court's CM/ECF system, which provides service to all parties.

*/s/ James H. Percival*
CHIEF OF STAFF