UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| STATE OF FLORIDA,<br><br>*Plaintiff*,<br><br>v.<br><br>ALEJANDRO MAYORKAS, Secretary of Homeland Security, in his official capacity; RAUL ORTIZ, Chief of Border Patrol, in his official capacity; the UNITED STATES OF AMERICA.<br><br>*Defendants*. | Civil Action No. 3:23-cv-09962-TKW-ZCB |

**DECLARATION OF DEPUTY EXECUTIVE ASSOCIATE DIRECTOR DANIEL A. BIBLE**

I, Daniel A. Bible, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge, experience as a law enforcement officer, and documents and information made known or available to me from official records and reasonably relied upon in the course of my employment, hereby declare as follows:

1. I am providing this declaration in accordance with the orders issued by the U.S. District Court for the Northern District of Florida, Pensacola Division, in *Florida v. Mayorkas*, No. 23-9962 (N.D. Fla. May 16, 2023). ECF Nos. 31, 54, 58. The court has ordered ICE to: (1) "identify the number of aliens who have reported to ICE and been issued NTAs;" (2) "indicate when, where (city and state), and how (in person or

online) these aliens reported to ICE and were issued NTAs;" and (3) "explain what steps [ICE] is taking to track down the aliens who did not report as required and whether those efforts have been successful." ECF No. 31. The court has also ordered DHS to explain: (4) "why all aliens who have 'checked in' have not been issued an NTA or other charging document by [September 27, 2023]"; (5) "how long after the alien checks in it is taking for [DHS] to issue an NTA or other charging document and why it is taking so long to do so; (6) "the purported legal basis pursuant to which aliens who have checked-in but are not yet in immigration proceedings are still in the country"; and (7) "what enforcement action, if any, was taken against each of the 100 aliens who were still unaccounted for in the September status report as they are located." ECF No. 58.

2. This declaration is based upon my personal knowledge and information obtained from other individuals employed by ICE and DHS records. This declaration also incorporates the information previously provided in my prior declarations filed with the Defendant's Response to the Court's May 16 and 22, 2023 Orders. ECF Nos. 53, 55, 56.

3. Attached hereto as Exhibit 1 is a true and accurate copy of "Parole with Conditions (PAWC) Report_12082023" that ICE generated on December 8, 2023 at 2:40 PM in response to the Orders. This report is based on data provided by U.S. Customs and Border Protection (CBP), which identified 2,572 noncitizens released after 11:59 pm on May 11, 2023, and processed under the memorandum from Raul L. Ortiz, former Chief, U.S. Border Patrol, *Policy on Parole with Conditions in Limited Circumstances Prior to the Issuance of a Charging Document (Parole with Conditions)* (May 10,

2023)..[1]

4. Understanding that these reports shall be filed on the public docket, this information has been anonymized to ensure the personal identifying information of the noncitizens remains private. ERO Law Enforcement System and Analysis (LESA) Statistical Tracking Unit (STU) considered ICE guidance for the identification and disclosure of information protected by 8 U.S.C. § 1367 ("Section 1367") in its analysis and did not identify noncitizens with protected status for this production.

5. In response to question number one, the attached data shows that of the 2,572 noncitizens identified in this cohort, as of December 8, 2023, 2,538 have checked in with ICE, while 34 have not checked in. There are three new check-ins since the prior report.

6. Out of the 2,538 noncitizens who have checked in, 2,134 individuals have been served with a charging document. There are 12 new charging documents issued since the prior report. 404 individuals have not yet been served with a charging document even though they have checked in.[2]

7. In response to question number two, the attached data shows that as of December 8, 2023, 1,167 noncitizens have received a charging document via Certified Mail, or Regular Mail, and 967 noncitizens have received a charging document in-person.

8. Also in response to question number two: below is a breakdown of the number of noncitizens who checked in with specific ICE ERO Offices:

---

[1] This report attached as Exhibit 1 reflects data from the following sources: 1) The Unified Immigration Portal (UIP); 2) Check in and charging document data extracted from the Enforcement Integrated Database (EID); 3) FOAS data; 4) EARM data; 5) EOIR data; 6) ECCO data, or 7) OCOA data.
[2] Therefore, 438 individuals from the cohort of 2,572 have not yet been served with a charging document: 34 who have not checked in and 404 who checked in and were not yet served a charging document.

| Check-In Location | Count |
|---|---|
| Atlanta, GA | 141 |
| Baltimore, MD | 48 |
| Boston, MA | 208 |
| Buffalo, NY | 15 |
| Chicago, IL | 251 |
| Dallas, TX | 119 |
| Denver, CO | 101 |
| Detroit, MI | 72 |
| El Paso, TX | 24 |
| Houston, TX | 51 |
| Los Angeles, CA | 103 |
| Miami, FL | 175 |
| New Orleans, LA | 93 |
| New York City, NY | 441 |
| Newark, NJ | 140 |
| Philadelphia, PA | 62 |
| Phoenix, AZ | 26 |
| Salt Lake City, UT | 58 |
| San Antonio, TX | 47 |
| San Diego, CA | 6 |
| San Francisco, CA | 169 |
| Seattle, WA | 49 |
| St. Paul, MN | 42 |
| Washington, DC | 97 |
| **Total** | **2,538** |

Please note that the "Check-In Location" for an in-person check-in reflects the Area of Responsibility (AOR) where it occurred and for an online check-in, Check-in Location reflects the location where the appointment was made.

9. In response to question three, noncitizens who failed to timely report to ICE or request a Notice to Appear (NTA) are in violation of their parole conditions. As of December

    8, 2023, 34 are in violation of their parole conditions.

10. In response to question four, ERO personnel is instructed to prioritize the issuance of NTAs to this cohort and ERO continues to prioritize the issuance of these NTAs to this day. However, even with many offices expediting the issuance of NTAs, this process has taken longer than anticipated due to the overall large number of encounters and ERO having only approximately 6,000 officers nationwide who are responsible for various aspects of interior enforcement. Local offices continue to closely track these cases, and are reviewing them on an individualized basis, and prioritizing these cases where operationally feasible. As stated above, ERO has issued 2,134 NTAs to the noncitizens in this cohort, including the 12 new charging documents issued since the prior report.

11. In response to question five, duration between check-in and NTA issuance varies based on local office resources and the factual circumstances of each individual case. The average NTA processing time in cases of noncitizens who have been served with an NTA after checking in with ICE in this cohort was approximately 45 days.

12. In response to question six, under its Parole with Conditions policy, these individuals were paroled under INA § 212(d)(5), 8 U.S.C. § 1182(d)(5), for a period of sixty days in order to check-in with ICE. These individuals currently have no legal status in the United States.

13. In response to question seven, out of 37 noncitizens who failed to check-in on the last report, three noncitizens have subsequently checked-in. ERO continues looking for those who provided an invalid address or did not appear at the address they provided.

Executed this 15th day of December 2023, in Washington, D.C.

_____
Daniel A. Bible
Deputy Executive Associate Director
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security